Query    Reports    Utilities    Help    What's New    Log Out

CLOSED

# U.S. District Court
## District of Vermont (Burlington)
## CRIMINAL DOCKET FOR CASE #: 2:24-mj-00034-kjd-1

Case title: USA v. Knauss

Date Filed: 03/12/2024

Other court case number: 2:24-cr-00052-MAK USDC - Eastern
                          District of Pennsylvania

Date Terminated: 03/14/2024

---

Assigned to: Judge Kevin J. Doyle

**Defendant (1)**

**Patrick Knauss**                          represented by **FPD**
*TERMINATED: 03/14/2024*                    Office of the Federal Public Defender
                                            District of Vermont
                                            95 Pine Street, Suite 150
                                            Burlington, VT 05401
                                            (802) 862-6990
                                            Email: stephanie_baer@fd.org
                                            *ATTORNEY TO BE NOTICED*
                                            *Designation: Public Defender or*
                                            *Community Defender Appointment*

**Pending Counts**                          **Disposition**

None

**Highest Offense Level (Opening)**

None

**Terminated Counts**                       **Disposition**

None

**Highest Offense Level (Terminated)**

None

**Complaints**                              **Disposition**

None

---

**Plaintiff**

**USA**

represented by **Colin Owyang , AUSA**
United States Attorney's Office
District of Vermont
11 Elmwood Avenue, 3rd Floor
P.O. Box 570
Burlington, VT 05402-0570
802-651-8312
Fax: 802-951-6540
Email: colin.owyang@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Jonathan Ophardt , AUSA**
United States Attorney's Office
District of Vermont
11 Elmwood Avenue, 3rd Floor
P.O. Box 570
Burlington, VT 05402-0570
(802) 951-6725
Email: Jon.Ophardt@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/12/2024 | 1 | RULE 5(c)(3) Documents obtained from Eastern District of Pennsylvania (Philadelphia) as to Patrick Knauss. (Attachments: # 1 Indictment (Doc 1), # 2 Issued Arrest Warrant)(law) (Entered: 03/12/2024) |
| 03/12/2024 | 2 | ORDER Appointing FPD for Patrick Knauss. Signed by Deputy Clerk on 3/12/2024. (hbc) (Entered: 03/12/2024) |
| 03/12/2024 | 3 | NOTICE OF HEARING as to Patrick Knauss: Rule 5(c)(3) Initial Appearance set for 3/13/2024 2:30 PM in Burlington Courtroom 410 before Judge Kevin J. Doyle. (hbc) (Entered: 03/12/2024) |
| 03/12/2024 | 4 | MOTION for Detention *with Request for Oral Argument/Hearing* by USA as to Patrick Knauss. (Owyang, Colin) (Entered: 03/12/2024) |
| 03/13/2024 | 5 | MINUTE ENTRY for proceedings held before Judge Kevin J. Doyle: Initial Appearance in Rule 5(c)(3) Proceedings as to Patrick Knauss held on 3/13/2024. Present are AUSAs Colin Owyang and Matthew Lasher for the gov't, AFPD Sara Puls w/ deft, and J. Barriere for the USPO. Financial affidavit reviewed. Court informs deft of rights and provisions of Fed. R. Crim. P. 20. Court makes inquiries and informs deft of the Indictment out of the Eastern District of Pennsylvania. Deft waives right to identity hearing. Gov't moves for detention and deft requests a continuance. **ORAL ORDER:** Consistent with Fed. R. Crim. P. 5(f), Court confirms disclosure obligation of the prosecutor under *Brady v. Maryland* and possible consequences of violating such Order. **ORDERED:** Court appoints counsel on behalf of deft. Deft remanded to the custody of the US Marshal to be detained pending Detention Hearing set for 3/14/2024 at 2:30 PM in Burlington Courtroom 410 before Judge Kevin J. Doyle. (Court Reporter: Recorded) (hbc) (Entered: 03/13/2024) |
| 03/13/2024 | 6 | CJA 23 Financial Affidavit as to Patrick Knauss. (Document image is sealed) (hbc) (Entered: 03/13/2024) |
| 03/13/2024 | 7 | ORDER of Prosecutorial Obligation Under Fed. R. Crim. P. 5(f) as to Patrick Knauss. Signed by Judge Kevin J. Doyle on 3/13/2024. (hbc) (Entered: 03/13/2024) |

| 03/13/2024 | 8 | ORDER SCHEDULING A DETENTION HEARING as to Patrick Knauss. Detention Hearing set for 3/14/2024 at 2:30 PM in Burlington Courtroom 410 before Judge Kevin J. Doyle. Signed by Judge Kevin J. Doyle on 3/13/2024. (hbc) (Entered: 03/13/2024) |
| --- | --- | --- |
| 03/14/2024 | 9 | SUPPLEMENT to 4 MOTION for Detention by USA as to Patrick Knauss. (Attachments: # 1 Exhibit 1) (Owyang, Colin) Event/text/attachment name corrected on 3/14/2024 (hbc). (Entered: 03/14/2024) |
| 03/14/2024 | 10 | RESPONSE to 4 MOTION for Detention by Patrick Knauss. (Attachments: # 1 Exhibit A) (Puls, Sara) Attachment name updated on 3/14/2024 (hbc). (Entered: 03/14/2024) |
| 03/14/2024 | 11 | MINUTE ENTRY for proceedings held before Judge Kevin J. Doyle: Detention Hearing as to Patrick Knauss held on 3/14/2024. Present are AUSAs Colin Owyang and Matthew Lasher for the gov't, AFPD Sara Puls w/ deft, and J. Barriere for the USPO. Arguments by counsel. Court makes findings. ORDERED: 4 MOTION for Detention is granted. (Court Reporter: Recorded) (hbc) (Entered: 03/14/2024) |
| 03/14/2024 | 12 | ORDER OF DETENTION as to Patrick Knauss. Signed by Judge Kevin J. Doyle on 3/14/2024. (hbc) (Entered: 03/14/2024) |
| 03/14/2024 | 13 | COMMITMENT TO ANOTHER DISTRICT as to Patrick Knauss. Defendant committed to Eastern District of Pennsylvania. Signed by Judge Kevin J. Doyle on 3/14/2024. (hbc) (Entered: 03/14/2024) |

# United States District Court
## Eastern District of Pennsylvania (Philadelphia)
### CRIMINAL DOCKET FOR CASE #: 2:24−cr−00052−MAK−1

Case title: USA v. KNAUSS                    Date Filed: 02/08/2024

Other court case number:  22−35 E.D.P.A.

Assigned to: DISTRICT JUDGE MARK
A. KEARNEY

**USDC - DVT**
**2:24-mj-34-1**

## Defendant (1)

**PATRICK KNAUSS**

| Pending Counts | Disposition |
|---|---|
| 18:2251(a), (e) − CONSPIRACY TO MANUFACTURE CHILD PORNOGRAPHY (1) | |
| 18:2252(a)(2), (b)(1) − CONSPIRACY TO RECEIVE AND DISTRIBUTE CHILD PORNOGRAPHY (2) | |
| 18:2252(a)(2), (b)(1) − RECEIPT OF CHILD PORNOGRAPHY (3) | |

**Highest Offense Level (Opening)**

Felony

| Terminated Counts | Disposition |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| Complaints | Disposition |
|---|---|
| None | |

## Plaintiff

| | | |
|---|---|---|
| **USA** | represented by | **KELLY M HARRELL** |
| | | U.S. ATTORNEY'S OFFICE |
| | | 615 CHESTNUT STREET |
| | | SUITE 1250 |
| | | PHILADELPHIA, PA 19106 |
| | | 215−861−8646 |
| | | Email: kelly.harrell@usdoj.gov |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: Assistant US Attorney* |

| Date Filed | # | Docket Text |
|---|---|---|

| 02/08/2024 | 1 | SEALED INDICTMENT as to PATRICK KNAUSS (1) count(s) 1, 2, 3. (Attachments: # 1 Designation Form) (tomg) (Additional attachment(s) added on 2/9/2024: # 2 SIGNATURES, # 3 INFORMATION SHEET) (tomg). (Entered: 02/09/2024) |
| --- | --- | --- |
| 02/08/2024 | 2 | MOTION AND ORDER TO SEAL AS TO PATRICK KNAUSS. Signed by MAGISTRATE JUDGE SCOTT W. REID on 2/8/2024.2/9/2024 Entered. (tomg) (Entered: 02/09/2024) |
| 02/08/2024 | 3 | MOTION AND ORDER FOR ISSUANCE OF BENCH WARRANT AS TO PATRICK KNAUSS. Signed by MAGISTRATE JUDGE SCOTT W. REID on 2/8/2024.2/9/2024 Entered. (tomg) (Entered: 02/09/2024) |
| 03/12/2024 |  | ***INDICTMENT UNSEALED as to PATRICK KNAUSS (ems) (Entered: 03/12/2024) |
| 03/12/2024 | 4 | Letter from AUSA Unsealing Indictment as to PATRICK KNAUSS (ems) (Entered: 03/12/2024) |

USDC - DVT
2:24-mj-34-1

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO.__24-_____ |
| v. | : | DATE FILED:_____ |
| PATRICK KNAUSS | : | VIOLATIONS: |
| | | 18 U.S.C. § 2251(a), (e) (conspiracy to |
| | : | manufacture child pornography – 1 count) |
| | : | 18 U.S.C. § 2252(a)(2), (b)(1) (conspiracy to receive and distribute child |
| | : | pornography – 1 count) |
| | | 18 U.S.C. § 2252(a)(2), (b)(1) (receipt of |
| | : | child pornography – 1 count) |
| | | Notice of forfeiture |

## INDICTMENT

## COUNT ONE

**THE GRAND JURY CHARGES THAT:**

From on or about August 11, 2019 to on or about October 7, 2021, in the Eastern

District of Pennsylvania and elsewhere, defendant

## PATRICK KNAUSS,

Person #1, and Person #2, who are known to the grand jury, conspired and agreed together to

employ, use, persuade, induce, entice, and coerce minors, who had not attained the age of 18

years, to engage in sexually explicit conduct for the purpose of producing visual depictions of

that conduct, that is, by soliciting minors to photograph and video record themselves engaging in

sexually explicit conduct and transmit the images via the Internet, and defendant KNAUSS,

Person #1, and Person #2 knew and had reason to know that the visual depictions would be

transported and transmitted using a facility of interstate and foreign commerce and in and

1

affecting interstate and foreign commerce, that is, the Internet.

All in violation of Title 18, United States Code, Sections 2251(a), (e).

## COUNT TWO

**THE GRAND JURY CHARGES THAT:**

From on or about August 11, 2019 to on or about October 7, 2021, in the Eastern District of Pennsylvania and elsewhere, defendant

**PATRICK KNAUSS,**

Person #1, and Person #2, who are known to the grand jury, conspired and agreed together to knowingly receive and distribute any visual depiction using any means and facility of interstate and foreign commerce, that is, the Internet, and the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct and the visual depiction was of such conduct.

In violation of Title 18, United States Code, Sections 2252(a)(2), (b)(1).

## COUNT THREE

**THE GRAND JURY FURTHER CHARGES THAT:**

  On or about September 27, 2021, in the Eastern District of Pennsylvania and elsewhere, defendant

## PATRICK KNAUSS

knowingly received a visual depiction using any means and facility of interstate and foreign commerce, and in and affecting interstate and foreign commerce by any means, including by computer, and the producing of which involved the use of a minor engaging in sexually explicit conduct, and such visual depiction was of such conduct.

  In violation of Title 18, United States Code, Sections 2252(a)(2), (b)(1).

4

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

       1.    As a result of the violations of Title 18, United States Code, Sections 2251(a) and 2252(a)(2), as set forth in this indictment, defendant

### PATRICK KNAUSS

shall forfeit to the United States of America:

       (a)    any visual depiction, or any film, videotape, or other matter which contains any child pornography, which was produced, transported, mailed, shipped, or received as a result of such violations as charged in the indictment;

       (b)    any property, real or personal, constituting or derived from any proceeds obtained directly or indirectly from such violations; and

       (c)    any property, real or personal, used or intended to be used to commit or to facilitate the commission of such violations, including, but not limited to:

       i.    One LGE LM-G900 cellular phone, bearing IMEI (international mobile equipment identity) number 356040113866368; and

       ii.    One Dell Inspiron laptop, model 17R-5721, bearing serial number CPMY1X1, and internal 1-terabyte Samsung SATA HDD storage drive.

       2.    If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

       (a)    cannot be located upon the exercise of due diligence;

       (b)    has been transferred or sold to, or deposited with, a third party;

       (c)    has been placed beyond the jurisdiction of the Court;

(d)   has been substantially diminished in value; or

(e)   has been commingled with other property which cannot be divided
without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Sections 2428 and

2253, to seek forfeiture of any other property of the defendants up to the value of the property

subject to forfeiture.

All pursuant to Title 18, United States Code, Sections 2428 and 2253.

**A TRUE BILL:**

**GRAND JURY FOREPERSON**

**JACQUELINE C. ROMERO**
**United States Attorney**

6

No. _ _ _ _ _ _ _ _ _

## UNITED STATES DISTRICT COURT

Eastern District of Pennsylvania

<u>Criminal Division</u>

### THE UNITED STATES OF AMERICA

vs.

PATRICK KNAUSS

### INDICTMENT

Counts
18 U.S.C. § 2251(a), (e) (conspiracy to manufacture child pornography – 1 count)
18 U.S.C. § 2252(a)(2), (b)(1) (conspiracy to receive and distribute child pornography – 1 count)
18 U.S.C. § 2252(a)(2), (b)(1) (receipt of child pornography – 1 count)
**Notice of forfeiture**



_A true bill._

_____

Filed in open court this _____

_____ day.

_____
Foreperson

Bail, $ _____

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.   24-52 |
| | ) | |
| | ) | |
| | ) | |
| PATRICK KNAUSS | ) | |
| *Defendant* | | |

## ARREST WARRANT

To:      Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*   PATRICK KNAUSS                                                                                          ,

who is accused of an offense or violation based on the following document filed with the court:

☒ Indictment      ☐ Superseding Indictment      ☐ Information      ☐ Superseding Information      ☐ Complaint
☐ Probation Violation Petition      ☐ Supervised Release Violation Petition      ☐ Violation Notice      ☐ Order of the Court

This offense is briefly described as follows:
18:2251(a), (e) - CONSPIRACY TO MANUFACTURE CHILD PORNOGRAPHY;
18:2252(a)(2), (b)(1) - CONSPIRACY TO RECEIVE AND DISTRIBUTE CHILD PORNOGRAPHY;
18:2252(a)(2), (b)(1) - RECEIPT OF CHILD PORNOGRAPHY

Date:        02/08/2024                                                    /S/ THOMAS GIAMBRONE, DEPUTY CLERK
                                                                                              *Issuing officer's signature*

City and state:      PHILADELPHIA, PA                                 /S/ GEORGE V. WYLESOL, CLERK OF COURT
                                                                                              *Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . |
| Date: _____                                    _____ |
|                                                                           *Arresting officer's signature* |
|                                                                           _____ |
|                                                                           *Printed name and title* |

# UNITED STATES DISTRICT COURT

for the
District of Vermont

| | | |
|---|---|---|
| United States of America | | |
| v. | | Crim. No. 2:24-mj-34 |
| Patrick Knauss | | |

## <u>ORDER OF APPOINTMENT</u>

The Office of the Federal Public Defender is hereby appointed as attorney of record for the above-named defendant.

BY ORDER OF THE COURT.

Dated at Burlington, in the District of Vermont, this 12th day of March 2024.


JEFFREY S. EATON, Clerk
By: */s/ H. Beth Cota*
Deputy Clerk

NOTICE OF HEARING

# UNITED STATES DISTRICT COURT
### FOR THE
### DISTRICT OF VERMONT

United States of America

     v.                                Case No.  2:24-mj-34-1

Patrick Knauss

TAKE NOTICE that the above-entitled case is scheduled for Wednesday, March 13, 2024 at 2:30 p.m., in Burlington, Vermont, before the Honorable Kevin J. Doyle, Magistrate Judge, for a Rule 5(c)(3) Initial Appearance.

Location:  Burlington – 410 Courtroom

                                                 JEFFREY S. EATON, Clerk
By: */s/ H. Beth Cota*
Deputy Clerk
3/12/2024

TO:

Jonathan Ophardt, AUSA

Office of the Federal Public Defender

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF VERMONT

UNITED STATES OF AMERICA

**v.**                                              Case No.  2:24-mj-34-1

PATRICK KNAUSS

## GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

The United States of America, by and through its attorney, Nikolas P. Kerest, United

States Attorney for the District of Vermont, hereby moves for pretrial detention of the above-

named defendant pursuant to 18 U.S.C. § 3142(e) and (f).

1.  <u>Eligibility for Detention</u>.  This defendant is eligible for detention because the case

involves offenses of:  conspiracy to manufacture child pornography, in violation of 18 U.S.C. §

2251(a); conspiracy to receive and distribute child pornography, in violation of 18 U.S.C. §

2252(a)(2); and receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2).  As a result,

there is a rebuttable presumption, <u>see</u> 18 U.S.C. § 3142(e)(3)(E), and a serious risk that

defendant will flee, <u>see</u> 18 U.S.C. § 3142(f)(2)(A).

As outlined in greater detail below, defendant and his co-conspirators, Andrew Wolf and

Kray Strange,[1] operated an elaborate online child exploitation catfishing scheme to entice minor

---

[1]Notably, before the defendant was identified as a participant in this scheme, his co-conspirators
were charged in a separate indictment with conspiracy to manufacture child pornography and
related offenses in EDPA Criminal No. 22-35-MAK, *United States v. Andrew Wolf, et al*.  Both
co-conspirators were ordered detained pending trial after their initial appearances in EDPA.
Both ultimately entered open guilty pleas to the Indictment.  In 2023, Wolf was sentenced to
terms of 466 months' imprisonment (nearly 39 years), and Strange was sentenced to 33 years'
imprisonment.

boys to self-produce sexually explicit images and send them to the defendants over the Internet.
At the time, Wolf was in his eighteenth year as a middle school teacher at a private school in
Philadelphia, and Strange was a young adult living in Carthage, New York.  Together, the three
targeted boys with large social media followings, such as Little League World Series players and
child Tik Tok stars, as well as dozens of Wolf's own boy middle school students.  Throughout
their years of communications (which amount to nearly 2,000 pages), on a near daily basis, the
defendant and his co-conspirators also discussed their shared sexual interest in children and
traded images and videos of child sexual abuse material (CSAM).

From as early as August 11, 2019 through the federal arrest of co-conspirator Andrew
Wolf in EDPA on October 7, 2021, the defendant and his co-conspirators carried out their child
exploitation catfishing scheme and traded child sexual abuse material depicting the children they
successfully victimized, as well as other videos and images depicting children engaged in
sexually explicit conduct and being sexually abused by adults.

The evidence of the conspiracy includes nearly 10,000 Telegram messages over
approximately 2,000 pages, which were extracted from Wolf's cell phone pursuant to a federal
search warrant.  During these communications, the parties exchanged over 1,000 image/video
files.[2]  On Telegram, the defendant used the name "PK."  Throughout his communications with
Wolf, PK shared specific details pertaining to his geographic location (Vermont), age and birth
month (March 1989), and employment (a ski resort where Knauss told Wolf he occasionally

---

[2] Due to the files being extracted from Wolf's device in airplane mode (rather than connecting to
the Internet and risking destruction of evidence by another Telegram user having already deleted
the messages), law enforcement can only view the content of a small portion of these files.  The
others display as "empty" files.

snuck into guests' rooms to snoop and "sample" boys' underwear). All of these details were confirmed to be accurate through investigation. PK also shared the name of his Instagram account (zoey_madame) with Wolf via Telegram. Through investigation, FBI Philadelphia determined that the Instagram account was subscribed to the defendant's phone number and regular email address. In a May 2023 interview with investigators from the Vermont Attorney General's Office, the defendant ultimately admitted to operating these accounts.

The defendant and Wolf began communicating about their shared sexual interest in minor boys even earlier than their Telegram communications when, in 2018, the defendant contacted Wolf via email as a "fan" of Wolf's erotic pedophile fiction — short stories that often portrayed adult men raping minor boys that Wolf published on a website called "Nifty." The defendant signed his full name to these emails. After exchanging "fan-mail," the defendant and Wolf began communicating on the encrypted platform Telegram.

Eventually, Wolf introduced the defendant to co-conspirator Kray Strange on Telegram. Strange was reputed to be a prolific "baiter" of minor boys and victimized hundreds of minor boys by impersonating a minor girl on Snapchat and Instagram to entice the boys to self-produce child pornography and send the images to him. After Wolf introduced the defendant to Strange, the three of them participated in a group chat, in which they traded child pornography, provided social media handles and other identifying information for minor boys for Strange to target, and discussed Strange's efforts, including the defendant and Wolf providing instructions about what kinds of videos and images to entice the boys to self-produce. Throughout their communications, the defendant provided **more than 100** URLs of social media accounts belonging to boys who appear to be minors for Strange to attempt to victimize, and the defendant

-

repeatedly asked for updates about Strange's progress.  Strange also occasionally baited their victims in real time while also communicating with the defendant and Wolf on Telegram about what was happening in his separate communications with the minor.

The following exchange from September 22, 2021 is just one example taken from thousands of pages of Telegram messages of a similar nature of how the defendant and his co-conspirators carried out their scheme:

| | |
|---|---|
| Strange: | [Sends 18-second-long video of a minor boy removing his shirt and posing in a manner to display his penis] |
| **Defendant:** | **Who dat** |
| Strange: | [Minor boy's first name] |
| **Defendant:** | **Who haha** |
| Strange: | He's just a boy |
| **Defendant:** | **Ohhh** <br> **Hes cute from what I can see** |
| Wolf: | [Minor boy's first name] (devil smiley emoji) |
| **Defendant:** | **What else did [minor boy's first name] show you** |
| Strange: | This is rn [right now] |
| Strange: | [Sends 8-second-long video depicting a close-up of a minor inserting a finger into his anus.  Towards the end of the video, the camera angle moves up to expose the minor's penis.] |
| **Defendant:** | **How old is he?** |
| Strange: | He tells me 14 but he's in seventh grade and just celebrated his 13th birthday |
| **Defendant:** | **Ah** |

-

4

Any siblings?[3]

| | |
|---|---|
| Strange: | [Sends image file, now "empty"]<br>[Sends image of a nude minor boy with his penis expose while laying on a bed] |
| Strange: | Sisters |
| **Defendant:** | **His ass is nice and tight** |
| Strange: | Ya |
| **Defendant:** | **Love that belly button, hed be fun to play with**<br>**Should get him in his sisters panties** |
| Strange: | His sister is an infant lol |
| **Defendant:** | **Oh**<br>**Well how was I supposed to know** |
| Strange: | [Sends a 7-second-long video depicting a close-up of a minor's penis while he masturbates and ejaculates on himself while laying on a bed] |
| **Defendant:** | **What a waste of a shot, all over his bed instead of him… damn nice load Though** |
| Strange: | Agreed |
| | … |
| Strange: | [Sends 4-second-long video of a minor boy stepping out of his underwear and displaying his penis] |
| **Defendant:** | **He needs to show his face soon**<br>**I bet his cum face is amazing** |

---

[3] One of the group's goals included enticing minor boys to act out sexually with their own brothers and minor friends. On one occasion, Strange enticed two 14-year-old boys (both of whom are identified minor victims who live in EDPA) to record themselves performing oral sex on each other and shared the videos with Wolf via Telegram. On another occasion, Wolf and Strange encouraged another identified 15-year-old minor victim to record himself touching his sleeping 10-year-old brother with his penis.

> Strange:    Ik
> [Sends 3-second-long video of a nude minor boy in what appears to be a bedroom, exposing his face and penis to the camera]
>
> **Defendant:**    **Oh damn**
> **Plead tell me hes got more**

The defendant also requested specific types of child sexual abuse material from Wolf and Strange and had a particular interest in children being violently abused.  For example, the defendant made the following requests:

- Any rape or bondage shit?
- Got any forced stuff?
- I'd love to find a good long abuse vi
- I need some BDSM boys
- I need more boy bondage
- You know of any good forced vids or piss

The context of the messages indicates that Wolf and Strange distributed files consistent with these descriptions to the group.  In addition to the files described above, the video and image files where content is viewable include a nearly 13-minute-long video of a minor boy masturbating and penetrating himself with a stick, and other images of minor boys masturbating and inserting their fingers into their anuses.

The defendant also discussed his own efforts to "bait" minor boys by impersonating a girl online with his co-conspirators.  For example, on August 14, 2019, the defendant sent multiple image files (now appearing as "empty files") to Wolf, which the defendant told Wolf depicted his own 16-year-old cousin, whom he claimed he baited via a fake Instagram account, which enabled him to see his minor cousin "cum and play with his ass."

On May 4, 2023, pursuant to a state search warrant, Vermont law enforcement seized the defendant's cell phone and computer from the apartment where he lived alone.  The defendant's

-

6

cell phone contained at least 17 unique, cached images of child pornography, including images that appear identical to images and videos Strange distributed during the exchange outlined above, as well as other images that appear identical to files that Strange and Wolf distributed in the Telegram group.  The defendant's phone also contained cached images (not CSAM) depicting some of Wolf's identified middle school students.  The defendant's laptop also contained evidence of CSAM in cached space.  Notably, the laptop also contained evidence of Kik communications dating back to 2014, in which the defendant appears to be impersonating a minor girl talking to boys about sexually explicit topics.

The defendant is charged for his role in these offenses in an Indictment issued by a federal grand jury sitting in the Eastern District of Pennsylvania (EDPA), where the defendant has no community ties.  The defendant faces a statutory maximum of 70 years' imprisonment, a mandatory minimum sentence of 15 years' imprisonment, and sentencing guidelines that call for life imprisonment.  The defendant has never served any time in prison and his lack of community ties to EDPA significantly increases his risk of flight in the face of his potential sentence.  For all of these reasons, and the reasons outlined below, the defendant is unable to rebut the statutory presumption that no combination of conditions will assure his appearance for trial or the safety of the community, and he should be detained.

2.    <u>Reason for Detention</u>.  The Court should detain the defendant because there are no conditions of release that will reasonably assure the safety of any other person and the community or the defendant's appearance as required.  <u>See</u> 18 U.S.C. § 3142(g).

As outlined above in section 1 and incorporated herein by reference, the nature and circumstances of the offenses charged are serious as they involve minor victims and the weight

of the evidence against the defendant is substantial.  See 18 U.S.C. § 3142(g)(1), (2).  The

defendant faces a maximum penalty of 70 years' imprisonment with a mandatory minimum term

of 15 years, a minimum 5 years up to a lifetime of supervised release, along with various

financial penalties and assessments.  The defendant's estimated sentencing guideline range calls

for a life sentence, significantly higher than the mandatory minimum 15 years' imprisonment.

The defendant has never before served a prison sentence and lacks ties to the EDPA where he is

charged.

The history and characteristic of the defendant support detention.  See 18 U.S.C.

§ 3142(g)(3)(A).  The defendant has no ties to the Eastern District of Pennsylvania.  The location

of the Court in EDPA where the defendant will be required to appear is approximately 400 miles

away from his residence and over 7 hours by car through several states.  The defendant's lack of

community ties to EDPA, where he is charged with very serious crimes, significantly increases

his risk of flight should he be released pending trial.  As discussed above, the defendant also

engaged in deceitful online activity from at least as early as 2014 by misrepresenting his identity

as a minor teenage girl in various social media applications, rather than the adult man that he is,

and by assisting other sex offenders to do the same, in a clear attempt to gain access to more

minor boys to victimize.

The Court should detain the defendant because he has violated conditions of release in his

Vermont state prosecution.  See 18 U.S.C. § 3142(g)(3)(B).  The defendant was arrested and

charged with possession of child pornography in the state of Vermont after Vermont law

enforcement investigated a lead out of FBI Philadelphia based on the evidence described above.

The defendant was released on conditions in that case, one of which includes that the defendant

-

8

should only access the Internet in public places for work, paying bills, and mental health. Prior

to the defendant's federal arrest on March 12, 2024, FBI located him through his use of a

Facebook account at his current home address (which was not the address on file with the state

prosecutor's office). On May 9, 2023, Vermont Superior Court Judge John Pacht placed the

defendant on conditions of release in Case No. 23-CR-04366. Those conditions included, among

others:

| Condition 33 | You shall not access the internet. |
|---|---|
| Condition 34 | You shall not possess or use any device that allows access to the internet to the extent that you would be able to access websites, social media accounts, search engines, email, messaging apps, multimedia, or pornographic materials including, but not limited to, computers, smart phones, gaming consoles, or handheld gaming devices. |

| Condition 37 | Exceptions to Conditions 33 and 34: in public portals such as libraries and your place of employment, and only for purposes for work, paying bills, and mental health concerns. |
|---|---|

FaceBook records in response to an administrative subpoena showed that the defendant had

logged into his FaceBook account in August 2023 and did not logout from it until February

2024. Nothing indicates that the defendant's access of his FaceBook account via the internet was

for purposes allowed by Condition 37.

The nature and seriousness of the danger to other people and the community posed by the

defendant's release are considerable. See 18 U.S.C. § 3142(g)(4). Pursuant to 18 U.S.C. §

3142(e)(3)(E), there is a rebuttable presumption in favor of detention for individuals who, like

this defendant, are charged with violating 18 U.S.C. § 2251(a). This presumption is based in part

on the Congressional determination that "sex offenders and child molesters are four times more

likely than other violent criminals to recommit their crimes." *Comments of Chairman Lemar

Smith*, H.R. Rep. 5422; *See also United States v. Farris*, 2008 WL 1944131 (W.D. Pa. 2008).

-

9

The dangers surrounding these types of offenses are widely recognized. *See McKune v. Lile*, 536 U.S. 24, 33 (2002) (emphasizing Department of Justice and Federal Bureau of Investigation statistics reflecting substantially increased likelihood of repeat arrests for sex offenders); *United States v. Pugh*, 515 F.3d 1179, 1199 (11th Cir.2008) (discussing influence of sexual offender recidivism in passage of various provisions in the PROTECT Act); *Report of Chairman Sensenbrenner*, H.R. Rep. 107-527, on amendment of 18 U.S.C. § 3583 (expressing congressional determination that "sex offenders and child molesters are four times more likely than other violent criminals to recommit their crimes" and referencing studies and findings documenting (1) a significantly higher rate of recidivism among sexual predators, (2) the number of undetected offenses which such individuals actually commit and (3) the psychological impact such offenses have on the victims); *Doe v. Bredesen*, 507 F.3d 998, 1006 (6th Cir.2007) (noting the legislative findings in numerous states passing sex offender registration systems reflecting the "undisputed high risk of recidivism" by such sex offenders).  A defendant may rebut the presumption of pretrial detention by presenting "some credible evidence" that he will not pose a threat to the community upon her release. *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir.1986).

The defendant poses a clear danger to children in the community, and there is no condition or combination of conditions that could assure the safety of the community if he is released.  Even a condition that prohibits the defendant from having contact with minor children would not adequately assure the safety of children in the community if the defendant is released because there is no way to effectively monitor his compliance with such a condition.  Only a 24-

hour watch by the Bureau of Prisons can ensure the safety of the community and children, in particular, from the defendant.

Furthermore, as demonstrated by the defendant's conduct to date in violation of Judge Pacht's conditions of release, there is no way to effectively monitor this defendant's online access to children and other sexual predators, for the following reasons:

(1)     Access to the internet is possible through desktop and laptop computers, cell phones, iPods, iPads, and even gaming devices.  There is no way to prevent the defendant from purchasing or using an Internet accessible device without the knowledge of Pretrial Services.

(2)     Storage devices can range in size, down to the size of a postage stamp, making it impossible for a Pretrial Services officer to locate.  There is no way to prevent the defendant from obtaining any storage medium, and no amount of supervision that would detect it in his home or elsewhere.

(3)     There is no way to monitor whether the defendant will access the Internet – and child pornography and/or communication with minors about sexual activity – using a public library's computers, using family members' or friends' electronic equipment, or Internet access at any other location, given that there is free WiFi access from any number of public places.

(4)     Even if this Court were to order that computer monitoring software be installed on the defendant's home computer(s), there would be no way to detect if he were to subvert the computer monitoring software by simply inserting a device with its own operating system into the computer being monitored, thereby bypassing the monitoring software altogether.  The defendant's activities would be completely undetected, and the Pretrial Services officer – and this Court – would instead be issued a report that the defendant is in "compliance."

It is difficult to conceive of any supervision that would detect the defendant's criminal activities.  And, in fact, FBI effectuated the federal arrest by tracking the defendant's use of a Facebook account that he was not permitted to access per his state release conditions.  Pre-Trial Services is limited to inspection of items that are in plain view of the officers.  Nor is Pretrial Services permitted to seize electronic evidence.  The fact that the defendant has no ties to EDPA

11

further hinders the ability of Pretrial to supervise him because he would likely be supervised outside the District in which he is charged. "The ubiquitous presence of the internet and the all-encompassing nature of the information it contains are too obvious to require extensive citation or discussion." *United States v. Schenberger*, 498 F.Supp.2d 738, 745 (D. N.J. 2007) ("This Court is not persuaded that meaningful assurances can be given that defendant's access to the internet can be stopped. Even if the defendant could somehow be prohibited from creating, viewing, or exchanging images of child pornography, it is difficult to conceive of measures that could confidently assure that defendant would not communicate with others and encourage the distribution of child pornography and related illicit activities."); *see also United States v. Voelker*, 489 F.3d 139, 145 (3d Cir.2007) (finding detention appropriate for a defendant charged with distributing and receiving child pornography, based on the dangers associated with child pornography offenses and the difficulty to effectively monitor understanding the accessibility of the Internet). Accordingly, the Government requests that the defendant remain in custody pending trial.

The defendant poses a clear danger to children in the community, and there is no condition or combination of conditions that could assure the safety of the community if he is released. The defendant has victimized hundreds of children via the Internet. Through his involvement in the conspiracy outlined above, he has already demonstrated that he is willing to engage in deceit to get what he wants— access to boys – which suggests he would be even more difficult to monitor on pretrial release. He has already violated at least one condition of his state pretrial release, where the stakes are much lower than the federal sentence of at least 15 years that the defendant now faces as a result of this Indictment. There is simply no way to adequately

-

monitor this defendant should he be released, nor any way to ensure compliance with any

conditions this Court may impose, to eradicate the danger he poses to children in the community.

Only a 24-hour watch provided by the Bureau of Prisons will ensure that the defendant does not

endanger the public.

Moreover, prison is a certainty for this defendant if convicted of these crimes– he faces a

mandatory minimum of 15 years' imprisonment, and sentencing Guidelines call for an even

higher sentence of life imprisonment.  The anticipation of this severe sentence gives the

defendant every incentive to flee, knowing that he will spend a significant period of time in

prison.  The defendant's lack of ties to the Eastern District of Pennsylvania significantly

increases his risk of flight.  In addition, the prospect of this lengthy prison sentence makes him

even more of a danger to children in the community, knowing that his release on bail may be the

last time he is free in many years, if ever.

3.    <u>Rebuttable Presumption</u>. The United States will invoke the rebuttable

presumption against the defendant under § 3142(e)(3)(E).  The rebuttable presumption applies

because the case involves offenses of: conspiracy to manufacture child pornography, in violation

of 18 U.S.C. § 2251(a); conspiracy to receive and distribute child pornography, in violation of 18

U.S.C. § 2252(a)(2); and receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2).

4.    <u>Time for Detention Hearing</u>.  The United States respectfully requests that the

Court conduct the detention hearing upon completion of the pretrial services report, unless the

defendant elects to consent temporarily to detention in this District, subject to detention hearing

in EDPA.  <u>See</u> Fed. R. Crim. P. 5.1(b).

-

5.      <u>Other Matters</u>.  For all of the foregoing reasons, this Court should detain the defendant because he cannot rebut the presumption under 18 U.S.C. § 3142(f)(1)(E) that no condition or combination of conditions will reasonably assure his presence for trial or the safety of the community.

WHEREFORE, the government respectfully requests the Court detain this defendant prior to trial.

Dated at Burlington, Vermont on this 12th day of March 2024

Sincerely,

NIKOLAS P. KEREST
United States Attorney


By:      */s/ Colin Owyang*
COLIN OWYANG
Assistant U.S. Attorney

-

14

# UNITED STATES DISTRICT COURT
### for the
### District of Vermont

```
U.S. DISTRICT COURT
DISTRICT OF VERMONT
      FILED

    3|13|24

BY_____ HBC
   DEPUTY CLERK
```

United States of America

      v.

Patrick Knauss

Crim. No. 2:24-mj-34

## <u>ORDER</u>

This Order is entered, pursuant to Federal Rule of Criminal Procedure 5(f) and the Due Process Protections Act, Pub. L. No 116–182, 134 Stat. 894 (Oct. 21, 2020), to confirm the Government's disclosure obligations under *Brady* v. *Maryland*, 373 U.S. 83 (1963), and its progeny, and to summarize the possible consequences of violating those obligations.

The Government must disclose to the defense all information "favorable to an accused" that is "material either to guilt or to punishment" and that is known to the Government. *Id.* at 87. This obligation applies regardless of whether the defendant requests this information or whether the information would itself constitute admissible evidence. The Government shall disclose such information to the defense promptly after its existence becomes known to the Government so that the defense may make effective use of the information in the preparation of its case.

As part of these obligations, the Government must disclose any information that can be used to impeach the trial testimony of a Government witness within the meaning of *Giglio v. United States*, 405 U.S. 150 (1972), and its progeny. Such information must be disclosed sufficiently in advance of trial in order for the defendant to make effective use of it at trial or at such other time as the Court may order.[1]

The foregoing obligations are continuing ones and apply to materials that become known to the Government in the future. These obligations also apply to information that is otherwise subject to disclosure regardless of whether the Government credits it.

---

[1] This Order does not purport to set forth an exhaustive list of the Government's disclosure obligations.

In the event the Government believes that a disclosure under this Order would compromise witness safety, victim rights, national security, a sensitive law-enforcement technique, or any other substantial government interest, it may apply to the Court for a modification of its obligations, which may include in camera review or withholding or subjecting to a protective order all or part of the information otherwise subject to disclosure.[2]

For purposes of this Order, the Government has an affirmative obligation to seek all information subject to disclosure under this Order from all current or former federal, state, and local prosecutors, law enforcement officers, and other officers who have participated in the prosecution, or investigation that led to the prosecution, of the offense or offenses with which the defendant is charged.

If the Government fails to comply with this Order, the Court, in addition to ordering production of the information, may:

(1) specify the terms and conditions of such production;

(2) grant a continuance;

(3) impose evidentiary sanctions;

(4) impose contempt or other sanctions on any lawyer responsible for violations of the Government's disclosure obligations, or refer the matter to disciplinary authorities;

(5) dismiss charges before trial or vacate a conviction after trial or a guilty plea; or

(6) enter any other order that is just under the circumstances.

SO ORDERED.

3/13/2024
Date

Kevin J. Doyle
United States Magistrate Judge

---

[2] The Classified Information Procedures Act sets forth separate procedures to be followed in the event that the Government believes matters relating to classified information may arise in connection with the prosecution. *See* 18 U.S.C. app. 3 §§ 1 *et seq.*

2

AO 470 (Rev. 01/09) Order Scheduling a Detention Hearing

# UNITED STATES DISTRICT COURT
for the
District of Vermont

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. 2:24-mj-34 |
| Patrick Knauss | ) | |
| _____ | ) | |
| *Defendant* | ) | |

## ORDER SCHEDULING A DETENTION HEARING

A detention hearing in this case is scheduled as follows:

| Place: U.S. District Court<br>11 Elmwood Avenue<br>Burlington, Vermont 05401 | Courtroom No.: **410** |
|---|---|
| | Date and Time: **3/14/2024    2:30 pm** |

**IT IS ORDERED:** Pending the hearing, the defendant is to be detained in the custody of the United States marshal or any other authorized officer. The custodian must bring the defendant to the hearing at the time, date, and place set forth above.

Date:    3/13/2024                          /s/ Kevin J. Doyle
                                         *Judge's signature*

                                    Kevin J. Doyle, United States Magistrate Judge
                                         *Printed name and title*

AO 470  (Rev. 01/09)  Order Scheduling a Detention Hearing

# UNITED STATES DISTRICT COURT
### for the
### District of Vermont

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No.  2:24-mj-34 |
| | ) | |
| Patrick Knauss | ) | |
| _____ | ) | |
| *Defendant* | ) | |

## ORDER SCHEDULING A DETENTION HEARING

A detention hearing in this case is scheduled as follows:

| | |
|---|---|
| Place:  U.S. District Court<br>11 Elmwood Avenue<br>Burlington, Vermont 05401 | Courtroom No.:  **410** |
| | Date and Time:  **3/14/2024    2:30 pm** |

**IT IS ORDERED:**  Pending the hearing, the defendant is to be detained in the custody of the United States marshal or any other authorized officer.  The custodian must bring the defendant to the hearing at the time, date, and place set forth above.

Date:  ___3/13/2024___

_____
*/s/ Kevin J. Doyle*
*Judge's signature*

_____
Kevin J. Doyle, United States Magistrate Judge
*Printed name and title*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF VERMONT

UNITED STATES OF AMERICA

    **v.**

PATRICK KNAUSS

Case No.  2:24-mj-34-1

## GOVERNMENT'S SUPPLEMENT TO ITS MOTION FOR PRETRIAL DETENTION

The United States of America, by and through its attorney, Nikolas P. Kerest, United States Attorney for the District of Vermont, hereby submits respectfully this Supplement to its March 12, 2024 Motion for Pretrial Detention.

The government provides as Exhibit 1, attached hereto and incorporated herein by reference, a copy of the May 9, 2023 Conditions of Release ordered by Judge Pacht in Defendant's state prosecution, Case No. 23-CR-04366.  That Order imposed 11 non-sequentially numbered conditions which Defendant signed and acknowledged when he appeared in-person at his arraignment with counsel.

Defendant has violated at least five of those conditions as far as the government knows.

Condition 02 ordered Defendant: "You must give your attorney and the court clerk your address and phone number.  If it changes, you must tell them immediately."  Defendant did not do so.

Condition 33 ordered Defendant: "You shall not access the internet."  Defendant did so.

Condition 34 ordered Defendant: "You shall not possess or use any device that allows access to the internet . . . ."  Defendant did so.

-

1

Condition 35 ordered Defendant: "You shall not possess or use any media storage device . . . ." Defendant did so.

Condition 37 provided exceptions to Conditions 33 and 34 for "in public portals such as libraries and your place of employment, and only for purposes for work, paying bills, and mental health." Defendant's violation of Conditions 33 and 34 did not fall within this exception.

As previously proffered by the government in its March 12, 2024 Motion, FaceBook records in response to an administrative subpoena showed that the defendant had logged into his FaceBook account in August 2023 and did not logout from it until February 2024. Authorities identified Defendant's location in Middlebury, VT through the IP addresses associated with those logins. Defendant's violation of Condition 02 necessitated these efforts. Defendant surrendered a smartphone when arrested on March 12, 2024, as noted in the bail report.

Defendant has violated the same sort of conditions which this Court might impose in any release, proving that there are no conditions which can reasonably assure the safety of any other person and the community or assure Defendant's appearance.

WHEREFORE, the government respectfully requests the Court to detain defendant.

Dated at Burlington, Vermont on this 14th day of March 2024

Sincerely,

NIKOLAS P. KEREST
United States Attorney

By:     /s/ Colin Owyang
COLIN OWYANG
Assistant U.S. Attorney

2

VERMONT SUPERIOR COURT

Chittenden Unit
32 Cherry St Suite 300
Burlington, VT 05401
802-651-1950
www.vermontjudiciary.org



CRIMINAL DIVISION
Case No. 23-CR-04366

| State of Vermont v. Patrick Knauss | DOB: 03/22/1989 |

## Conditions of Release

Date of Order:   05/09/2023

Arresting Agency:   Attorney General Office

| 1 | POSSESSION OF CHILD PORNOGRAPHY | 13 VSA 2827(a) |
| 2 | POSSESSION OF CHILD PORNOGRAPHY | 13 VSA 2827(a) |
| 3 | POSSESSION OF CHILD PORNOGRAPHY | 13 VSA 2827(a) |

The Court has determined that future appearance(s) of the defendant will not be reasonably assured by his or her release on personal recognizance or execution of an unsecured appearance bond alone; or that the release of the defendant will constitute a danger to the public. It is therefore ORDERED that the defendant be released upon the following conditions: ·

| Condition 01 | You must come to court when you are told to. |
| Condition 02 | You must give your attorney and the court clerk your address and phone number. If it changes, you must tell them immediately. |
| Condition 14 | You must NOT have contact with Kyle Wolf, Kray Strange (AKA "Alex"), or minor known to you with initials G.S.P., which includes in person, in writing, by telephone, by e-mail or through a third person regardless of whether you are in jail or released. |
| Condition 15 | You must NOT abuse or harass any minor age 16 or under in any way regardless of whether you are in jail or released. |
| Condition 31 | You shall not enter upon the residence or property of any minor age 16 or under. |
| Condition 32 | You shall not access or loiter in places where children are congregating, including, but not limited to, schools, parks, and playgrounds. |
| Condition 33 | You shall not access the internet. |
| Condition 34 | You shall not possess or use any device that allows access to the internet to the extent that you would be able to access websites, social media accounts, search engines, email, messaging apps, multimedia, or pornographic materials including, but not limited to, computers, smart phones, gaming consoles, or handheld gaming devices. |
| Condition 35 | You shall not possess or use any media storage device that allows for the storage of digital files, including, but not limited to, hard drives, portable hard drives, thumb drives, flash drives, etc., as well as any recordable media such as compact disks or digital optical storage format disks (DVDs). |
| Condition 36 | You shall not possess or access any pornographic materials, including printed |

**Exhibit 1**

| | materials, video materials, digital materials, or any other format. |
|---|---|
| Condition 37 | Exceptions to Conditions 33 and 34: in public portals such as libraries and your place of employment, and only for purposes for work, paying bills, and mental health concerns. |

VIOLATIONS OF ANY OF THESE CONDITIONS IS A CRIME. If you violate any of these conditions the court may send you to jail or keep you in jail and you may be charged with new crimes. You must follow these conditions until your case is closed or until the court changes the conditions.

"Electronically signed" 5/9/2023 10:09 AM "pursuant to V.R.E.F 9(d)"

Honorable John Pacht
Superior Court Judge
I have received a copy of this order. I have read it. I understand it.

Date: **5-9-23**    Time: **10:10 AM** am/pm

Defendant's Signature: _____

**Exhibit 1**

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 2:24-mj-00034 |
| | ) | |
| PATRICK KNAUSS | ) | |
| Defendant | ) | |
| | ) | |

**DEFENDANT'S MOTION IN OPPOSITION TO GOVERNMENT'S MOTION FOR
DETENTION**

Now Comes Patrick Knauss, by counsel, and submits this motion in Opposition to the

Government's Motion for Detention (Doc. 4 and Doc. 9). Pursuant to the Bail Reform Act, Mr.

Knauss is requesting pre-trial release, as set forth below.

*Introduction*

Mr. Knauss is being charged with very serious crimes out of the Eastern District of

Pennsylvania. He has no ties to Pennsylvania – that is correct. However, under the Bail Reform

Act or otherwise, this fact should not cut against him in terms of risk of flight or release

prospects – he has a proven track record of appearing for court on similar conduct that is now

charged federally. Further, he is actively engaged in treatment, is working, and there are

conditions of release that can reasonably assure public safety and appearance. Vermont is where

Mr. Knauss has a robust community and support system; whereas in Pennsylvania, he has no

family, ties or community. If sent to Pennsylvania, he will be extremely disadvantaged in

defending himself against these charges while being held, pre-trial. Because the importance and

implications of pre-trial release are, defense argues, much greater and of even more importance

to Vermont residence Mr. Knauss than the average case, he offers this response to the Government's Motion for his Detention. Doc. 4 and Doc. 9.

As set forth in the pre-trial services report, Mr. Knauss has no criminal history, is a college graduate, is a life-long resident of Vermont and New Hampshire (but for a brief stint in Florida for school), is actively engaged in offense-specific treatment (see *attached,* Exhibit A, letter from Su Robinson), and had been gainfully employed up until his arrest a few days ago. He does not abuse drugs or alcohol and has no history of substance use. He has a stable residence with his aunt and uncle in Shoreham, Vermont where he has resided since last December and where he is welcome to return should he be released.

Counsel spoke to Randal Orvis on March 13, 2024, and he corroborated that his nephew, Mr. Knauss, has been living with them – he hopes he can continue to do so. Mr. Orvis recently had a stroke, and Mr. Knauss has been helping care for him. Mr. Orvis notes that Mr. Knauss has done a very "excellent job" around the house and helping take care of him. Mr. Orvis wants him back home and notes it "would be greatly appreciated" if the Court would allow for him to return home. There are no firearms at the home and no children reside there or even visit the home.

Mr. Knauss has a pending State of Vermont case (since May of 2023) in which he has no failures to appear. The Government has proffered up several alleged violations of his pre-trial conditions on that case, both in their initial motion and a supplemental motion. Currently, Mr. Knauss has no pending violations of his conditions on the state docket. When he moved, he did give notice of his move as required under Condition 2 to his attorney. The alleged Facebook login (for which defense has received no evidence of other than the Government's proffer, and it remains unclear how this information was initially obtained as there is no indication of a

warrant),  in and of itself is circumstantial evidence, at best, of internet use – someone logged in

to his Facebook account, there is no direct evidence of who or that it was Mr. Knauss.

*Mr. Knauss' eligibility for detention – he is not eligible for detention as a "serious risk of flight –*

As set forth in the government's Motion for Detention, Doc. 4, defense agrees Mr.

Knauss is eligible for detention based on the offenses involved and that these trigger the

rebuttable presumption. Doc. 4 at 1. He does not, however, agree that he is eligible for detention

under 18 U.S.C. § 3142(f)(2)(A) as a "serious risk of flight."

The government has not met its burden of proving that there is a *serious* risk of flight

here as opposed to an ordinary risk of flight. There is some risk of flight in every criminal case;

according to a basic canon of statutory interpretation, the term "serious risk" means that the risk

must be more significant. *See Corley v. United States*, 556 U.S. 303, 314 (2009) ("One of the

most basic interpretative canons" is "that a statute should be construed so that effect is given to

all its provisions, so that no part will be inoperative or superfluous, void or insignificant."). But

here, the government has not presented any evidence to support its allegation that the risk that

Mr. Knauss will flee rises to the level of a "serious risk." In fact, the Senate's 1983 Bail Reform

Act report makes clear that detention based on serious risk of flight should only occur only in

extreme and unusual cases. *See Bail Reform Act of 1983: Report of the Committee on the*

*Judiciary*, 98th Cong. 48 (1983)("Under subsection f(2), a pretrial Detention Hearing may be

held upon motion of the attorney for the government or upon the judicial officer's own motion in

three types of cases. . . . [T]hose [types] involving . . . a serious risk that the defendant will flee .

. . *reflect the scope of current case law that recognizes the appropriateness of denial of release*

*in such cases*.") (emphasis added) (citing *United States v. Abrahams*, 575 F.2d 3, 8 (1st Cir.

1978)—which held that only a "*rare case of extreme and unusual circumstances . . . justifies*

pretrial detention"—as representing the "current case law").

3

Detention based on serious risk of flight should only occur in extreme and unusual cases – that is not this case. Here, there is insufficient evidence to substantiate or make a finding that there is a "serious risk" Mr. Knauss will flee. Since last May, he has been facing a significant potential of up to 15 years of jail time on his current state charges and has appeared for every court appearance. He has significant ties to the community. A requirement to appear in Pennsylvania for court dates does not have any bearing on his risk of flight, nor does it elevate the risk to a "serious" one in this case.

*Mr. Knauss has rebutted the presumption –*

For the § 3142(e)(3) presumption, based on the nature of his charges and *not* serious risk of flight, the rebuttable presumption[1] is that no conditions will reasonably assure appearance and safety of the community. Mr. Knauss has rebutted this presumption. Under the law, it takes very little evidence to rebut the presumption, "the burden of production" to rebut the presumption "is not a heavy one to meet." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986); *see*

---

[1] In reality, the rules in § 3142(e)(2) and (3) should not be called "presumptions" at all, because that is not how they operate. A presumption of course typically shifts the burden of proof to one party; the presumption in § 3142(e) does not. Instead, the burden of proof/persuasion continues to rest with the government at all times. This presumption merely imposes on the defendant a burden of *production*, requiring the defendant to present some evidence that he/she will not flee and some evidence that he/she will not pose a danger to the community. *See, e.g., United States v. Jessup*, 757 F.2d 378, 380–84 (1st Cir. 1985) (holding that the government bears the burden of persuasion at all times while a defendant just bears a burden of production, which entails producing "some evidence" under § 3142(g)); *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (engaging in lengthy analysis of the different burdens the presumption places on each party, explaining that the defendant rebuts the presumption by producing "some evidence" under § 3142(g), and concluding that after it is rebutted, "the presumption remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)"); *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985) (holding that the defendant has a burden of production and only needs "to offer some credible evidence contrary to the statutory presumption"); *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985) (holding that the burden of persuasion rests with the government, not the defendant).

*also United States v. Mieses-Casiano*, 161 F. Supp. 3d 166, 168 (D.P.R. 2016) (the burden of production "the presumption imposes on the defendant . . . is not heavy") (emphasis added). Furthermore, the government still bears the burden of persuasion at all times. *Mieses-Casiano*, 161 F. Supp. 3d at 168. The defense just needs to present "some evidence" to rebut the presumption. *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985). The presumption can be rebutted by "[a]ny evidence favorable to a defendant that comes within a category listed in § 3142(g) . . . , including evidence of their marital, family and employment status, ties to and role in the community, clean criminal record and other types of evidence encompassed in 3142(g)(3)." *Dominguez*, 783 F.2d at 707. As long as a defendant "come[s] forward with some evidence that [the defendant] will not flee or endanger the community if released," the presumptions of flight risk and dangerousness are definitively rebutted. Id. (emphasis added). Significantly, "[o]nce this burden of production is met, the presumption is 'rebutted.'" Id. (quoting *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985)) (emphasis added). Any "evidence of economic and social stability" can rebut the presumption. *Id.*

Here, Mr. Knauss can rebut the presumption by offering evidence favorable to him that comes within a category listed in § 3142(g). As an initial matter, defense does not contest that the nature and circumstances of the offense charged are obviously very serious, and the government relies heavily on this for their request for detention. Yet, placing too much emphasis on the weight of the evidence is akin to applying a presumption of guilt, which is forbidden under § 3142(j). Furthermore, courts have held, weight of the evidence is the least important factor. *See, e.g.*, *United States v. Townsend,* 897 F.2d 989, 994 (9th Cir. 1990) ("The weight of the evidence against the defendant is a factor to be considered but it is 'the least important' of the various factors."); *United States v. Gray,* 651 F. Supp. 432, 436 (W.D. Ark. 1987) ("[T]he court

5

does not believe that . . . any court should presume that every person charged is likely to flee simply because the evidence against him appears to be weighty. . . . Such a presumption would appear to be tantamount to a presumption of guilt, a presumption that our system simply does not allow.").

Beyond that, the other § 3142(g) factors weigh in favor of rebuttal of the presumption and release of Mr. Knauss. Mr. Knauss has been working, has been living with his aunt and uncle, and has helped in the care for his uncle. He is welcome to return to live with them if he is released. Prior to his arrest in May of 2023, he held a steady job for over three years at a brewery. He is college educated and has no criminal record or history. He has been consistently attending offense-specific treatment since July of 2023. *See* Exhibit A. He has no history of abuse of drugs or alcohol. He has very lengthy and significant ties to Vermont. This evidence can rebut the presumption. *See, e.g., United States v. Torres-Rosario*, 600 F. Supp. 2d 327, 335 (D.P.R. 2009)("[D]espite his criminal history, Mr. Torres has verified ties to the community and to a family willing to assist in his compliance with release conditions."); *see also,* beyond the First and Seventh Circuits, other circuits have similarly held that a defendant can successfully rebut the presumption of detention simply by producing any evidence that the defendant is not a flight risk or danger to the community, and that the defendant need not produce much evidence to rebut the presumption. *See, e.g., United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985) (stating that a defendant has a burden of production and only needs "to offer some credible evidence contrary to the statutory presumption"); *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985) (stating that the burden of persuasion rests with the government, not the defendant).

The fact that Mr. Knauss has had a pending state case since last May and has no failures to appear also supports a finding that the presumption has been rebutted. *See Torres-Rosario*, 600 F. Supp. 2d at 334 (D.P.R. 2009) (finding presumption rebutted in part because, although defendant was on probation and had pending charges, "[t]here is no indication that Mr. Torres failed to appear at any court hearings in relation to any of these charges").

*Statistics and Studies Regarding Federal Defendants on Pre-Trial Release*

First, in response to some of the more general arguments and statistics the government points to in its motion for detention regarding safety, defense would note that the evidence actually shows that most federal defendants are not violent. The data shows that violent offenders make up just 2% of those arrested in the federal system. *See Felony Defendants in Large Urban Counties, 2009*, BUREAU OF JUSTICE STATISTICS, at 2 (2013).

Furthermore, the data also shows that the vast majority of released defendants appear in court and do not reoffend while on bond. In 2018, 98% of released federal defendants nationwide did not commit new crimes while on bond, and 99% appeared for court as required. *Judicial Business: Federal Pretrial Services Tables*, ADMIN. OFF. U.S. COURTS, Table H-15 (Sept. 30, 2018). In another study, it showed that ninety-nine percent of federal defendants released on bond are not arrested for a new violent crime. Even among people identified as being at the most serious risk of re-offense, over 97% are not rearrested for a new violent crime while on bond. Thomas H. Cohen, et al., *Revalidating the Federal Pretrial Risk Assessment Instrument: A Research Summary*, 82(2) Federal Probation 23, 27 (2018).

This near-perfect compliance is seen equally in federal districts with very high release rates and those with very low release rates.[2] The high federal detention rate also imposes huge

---

[2] Court data shows that the five federal districts with the lowest release rates (average 20.5%) have a failure to appear rate of 1.44%, while the five districts with the highest release rates (average 69.94%) have a

human and fiscal costs. On average, a defendant spends 255 days in pretrial detention, often in deplorable conditions. For example, in the depths of winter January 2019, pretrial detainees at the Metropolitan Detention Center in Brooklyn, New York went without heat and electricity for days. *See* Annie Correal, *No Heat for Days at a Jail in Brooklyn Where Hundreds of Inmates are Sick and 'Frantic,'* N.Y. TIMES, Feb. 1, 2019,

https://www.nytimes.com/2019/02/01/nyregion/mdc-brooklyn-jail-heat.html. Indeed, this is an ongoing issue in the Southern District of New York. The court there recently found exceptional circumstances to keep someone out of custody pending sentencing, citing in part, terrible conditions at the BOP facility, which also houses pretrial detainees. Benjamin Weiser*, Judge Refuses to Send Defendant in Drug Case to Troubled Brooklyn Jail,* N.Y. TIMES, Jan. 4, 2024*,*

https://www.nytimes.com/2024/01/04/nyregion/brooklyn-judge-mdc-jail.html (referring to the decision in *United States v. Gustavo Chavez,* 22 Cr. 303 (JMF)).

The evidence also shows that pretrial detention leads to an increased likelihood of conviction. *See* Megan Stevenson, *Distortion of Justice: How the Inability to Pay Bail Affects Case Outcomes,* 34 J. OF L. ECON. & ORG. 511, 512 (2018) (finding that pretrial detention leads to a 13% increase in the likelihood of conviction using data from state-level cases in Philadelphia); Dobbie et al., *supra* note 12, at 225 (finding that a defendant who is initially released pretrial is 18.8 percentage points less likely to plead guilty in Philadelphia and Miami-Dade counties); Mary T. Phillips, *A Decade of Bail Research*, 116 (2012), archived at https://perma.cc/A3UMAHGW ("[A]mong nonfelony cases with no pretrial detention [in New

---

failure to appear rate of 1.37%. *See* ADMIN. OFF. U.S. COURTS, Table H-15, *supra* note 8. The five districts with the lowest release rates have an average rearrest rate of 0.59%, while the five districts with the highest release rates have an average rearrest rate of 1.04%. *Id.* (The districts with the lowest release rates are the S.D. California, W.D. Arkansas, E.D. Tennessee, D. Puerto Rico, and S.D. Texas; the districts with the highest release rates are D. Guam, W.D. Washington, M.D. Alabama, E.D. Wisconsin, and D. Hawaii. *Id.*) So when release rates increase, crime and flight do not.

York City], half ended in conviction, compared to 92% among cases with a defendant who was detained throughout," and in the felony context "[o]verall conviction rates rose from 59% for cases with a defendant who spent less than a day in detention to 85% when the detention period stretched to more than a week").

It also results in longer sentences. An empirical study of the federal system found "that federal pretrial detention significantly increases sentences, decreases the probability that a defendant will receive a below-Guidelines sentence, and decreases the probability that they will avoid a mandatory minimum if facing one." Stephanie Didwania, *The Immediate Consequences of Pretrial Detention*, at 30 (2019), archived at https://ssrn.com/abstract=2809818. 18 U.S. Courts, *Incarceration Costs Significantly More than Supervision*, JUDICIARY NEWS (2017), https://www.uscourts.gov/news/2017/08/17/incarceration-costs-significantlymore-supervision. And federal pretrial detention imposes a high burden on taxpayers: It costs approximately $32,000 per year to incarcerate a defendant, but just $4,000 to supervise them on pretrial release.[3]

*__Once the presumption has been rebutted, it is just one factor in the analysis – the Court should__ __not__ __hold that there are "no release conditions" that will reasonably assure the safety of the__ __community.__*

Regardless of whether the Court finds that the presumption of detention has been rebutted, this Court still cannot detain Mr. Knauss without finding "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Dominguez*, 783 F.2d at 706–07; § 3142(e). Even in a "presumption" case, the defendant never bears the burden of proving that he is not a danger or a flight risk. The burden of proof continues to rest with the government. *United States*

---

[3] U.S. Courts, *Incarceration Costs Significantly More than Supervision*, JUDICIARY NEWS (2017), https://www.uscourts.gov/news/2017/08/17/incarceration-costs-significantlymore-supervision.

*v. Palmer-Contreras*, 835 F.2d 15, 17 (1st Cir. 1987); *see also United States v. Torres-Rosario*, 600 F. Supp. 2d 327, 330 (D.P.R. 2009). And again, even in a "presumption" case, the statute contains a "least restrictive conditions" requirement: the judge "shall order the pretrial release of the person," § 3142(c)(1), "subject to the least restrictive further condition, or combination of conditions that . . . will reasonably assure the appearance of the person . . . and the safety of any other person and the community," § 3142(c)(1)(B).

Based on the factors set forth above, Mr. Knauss argues that there are pretrial conditions that would "reasonably assure" appearance and safety – the requirement is *not* that it be guaranteed). These include – working or continuing to seek employment, residing with his aunt and uncle in Shoreham, Vermont, surrendering his passport, having home detention and/or curfew, monitoring location through GPS, attending treatment as directed by Probation, and continuing treatment with Su Robinson,

CONCLUSION

For the reasons stated above, Mr. Knauss requests the Court deny the Government's motion for detention and order him released on conditions pending further proceedings.

Dated: March 14, 2024

MICHAEL L. DESAUTELS
FEDERAL PUBLIC DEFENDER

By:     */s/ Sara M. Puls*
        SARA M. PULS
        Assistant Federal Public Defender
        District of Vermont
        95 Pine Street, Suite 150
        Burlington, Vermont 05401
        (802) 862-6990

EXHIBIT

A

**From:** Sara Puls
**To:** Sara Puls
**Subject:** FW: P. K.
**Date:** Wednesday, March 13, 2024 4:06:57 PM

**From:** Susan Robinson < ▨▨▨▨▨▨▨▨ >
**Sent:** Wednesday, March 13, 2024 12:48 PM
**To:** Kidney, William < ▨▨▨▨▨▨▨▨ >
**Subject:** P. K.

**EXTERNAL SENDER: Do not open attachments or click on links unless you recognize and trust the sender.**

Will,

Patrick began offense-specific therapy on July 24, 2023. He has been cooperative and appropriately engaged as a client. If you need further information, please let me know.

Thank you,

Su Robinson, LICSW

AO 472  (Rev. 09/16)  Order of Detention Pending Trial

# UNITED STATES DISTRICT COURT

for the

District of Vermont

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.  2:24-mj-34 |
| Patrick Knauss | ) | |
| *Defendant* | ) | |

**U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED**

3/14/24

BY_____ HJC

**DEPUTY CLERK**

## ORDER OF DETENTION PENDING TRIAL

### Part I - Eligibility for Detention

Upon the

☑ Motion of the Government attorney pursuant to 18 U.S.C. § 3142(f)(1), or

☐ Motion of the Government or Court's own motion pursuant to 18 U.S.C. § 3142(f)(2),

the Court held a detention hearing and found that detention is warranted.  This order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

### Part II - Findings of Fact and Law as to Presumptions under § 3142(e)

☐ **A.  Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(2)** *(previous violator)*:  There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because the following conditions have been met:

    ☐ **(1)** the defendant is charged with one of the following crimes described in 18 U.S.C. § 3142(f)(1):

        ☐ **(a)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**

        ☐ **(b)** an offense for which the maximum sentence is life imprisonment or death; **or**

        ☐ **(c)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**

        ☐ **(d)** any felony if such person has been convicted of two or more offenses described in subparagraphs (a) through (c) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (a) through (c) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**

        ☐ **(e)** any felony that is not otherwise a crime of violence but involves:
        **(i)** a minor victim; **(ii)** the possession of a firearm or destructive device (as defined in 18 U.S.C. § 921); **(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250; **and**

    ☐ **(2)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; **and**

    ☐ **(3)** the offense described in paragraph (2) above for which the defendant has been convicted was committed while the defendant was on release pending trial for a Federal, State, or local offense; **and**

    ☐ **(4)** a period of not more than five years has elapsed since the date of conviction, or the release of the defendant from imprisonment, for the offense described in paragraph (2) above, whichever is later.

AO 472  (Rev. 09/16)  Order of Detention Pending Trial

☑ **B.  Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)** *(narcotics, firearm, other offenses)*:  There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

   ❑ **(1)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);

   ❑ **(2)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

   ❑ **(3)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

   ❑ **(4)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**

   ☑ **(5)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

❑ **C.  Conclusions Regarding Applicability of Any Presumption Established Above**

   ❑ The defendant has not introduced sufficient evidence to rebut the presumption above, and detention is ordered on that basis. *(Part III need not be completed.)*

   **OR**

   ☑ The defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted.

### Part III - Analysis and Statement of the Reasons for Detention

After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the defendant must be detained pending trial because the Government has proven:

   ☑ By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

   ❑ By a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

In addition to any findings made on the record at the hearing, the reasons for detention include the following:

   ☑ Weight of evidence against the defendant is strong
   ☑ Subject to lengthy period of incarceration if convicted
   ❑ Prior criminal history
   ❑ Participation in criminal activity while on probation, parole, or supervision
   ❑ History of violence or use of weapons
   ❑ History of alcohol or substance abuse
   ❑ Lack of stable employment
   ❑ Lack of stable residence
   ❑ Lack of financially responsible sureties
   ❑ Lack of significant community or family ties to this district

AO 472  (Rev. 09/16)  Order of Detention Pending Trial

❐ Significant family or other ties outside the United States
❐ Lack of legal status in the United States
❐ Subject to removal or deportation after serving any period of incarceration
❐ Prior failure to appear in court as ordered
❐ Prior attempt(s) to evade law enforcement
❐ Use of alias(es) or false documents
❐ Background information unknown or unverified
❐ Prior violations of probation, parole, or supervised release

OTHER REASONS OR FURTHER EXPLANATION:

❐ Motion was unopposed by the defendant through statements of counsel

## Part IV - Directions Regarding Detention

The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  The defendant must be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Date:  March 14, 2024

Kevin J. Doyle, United States Magistrate Judge

AO 94  (Rev. 06/09) Commitment to Another District

# UNITED STATES DISTRICT COURT
for the

District of Vermont

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.   2:24-mj-34 |
| | ) | |
| Patrick Knauss | ) | Charging District's |
| *Defendant* | ) | Case No.   2:24-cr-00052-MAK |

## COMMITMENT TO ANOTHER DISTRICT

The defendant has been ordered to appear in the _____ Eastern _____ District of ___ Pennsylvania ___ ,
*(if applicable)* _____ division.  The defendant may need an interpreter for this language:
___ n/a ___ .

The defendant:   ❒ will retain an attorney.

☑ is requesting court-appointed counsel.

The defendant remains in custody after the initial appearance.

**IT IS ORDERED:** The United States marshal must transport the defendant, together with a copy of this order, to the charging district and deliver the defendant to the United States marshal for that district, or to another officer authorized to receive the defendant.  The marshal or officer in the charging district should immediately notify the United States attorney and the clerk of court for that district of the defendant's arrival so that further proceedings may be promptly scheduled.  The clerk of this district must promptly transmit the papers and any bail to the charging district.

Date:  ___ 03/14/2024 ___                                    ___ /s/ Kevin J. Doyle ___
                                                            *Judge's signature*

                                                            Kevin J. Doyle, U.S. Magistrate Judge
                                                            *Printed name and title*