**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| **v.** | **:** | **CRIMINAL NO. 24-52** |
| **PATRICK KNAUSS** | **:** | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Over a period of more than two years, the defendant and his co-conspirators, Andrew Wolf and Kray Strange, operated an elaborate online child exploitation catfishing scheme to entice minor boys to self-produce sexually explicit images and send them to the defendants over the Internet. At the time, Wolf was in his eighteenth year as a middle school teacher at Springside Chestnut Hill Academy ("SCH") in Philadelphia, and Strange was a young adult living in Carthage, New York. Together, the three targeted boys with large social media followings, such as Little League World Series players and child Tik Tok stars, as well as dozens of Wolf's own boy middle school students. Throughout their years of communications (which amount to nearly 2,000 pages), on a near daily basis, the defendant and his co-conspirators also discussed their shared sexual interest in children and traded images and videos of child sexual abuse material ("CSAM").

The government and the defendant entered into a guilty plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), in which the parties agreed to jointly recommend within a range of 262 to 274 months' imprisonment, to be followed by a period of at least 15 years of supervised release, and a $300 special assessment. A sentence within this range falls slightly below the bottom of the defendant's sentencing guideline range, which is 292 to 365 months' imprisonment. As further discussed herein, this plea agreement reflects the

government's consideration of the defendant's lesser role in the offenses and his relative culpability when compared with his co-conspirators, in addition to the nature and circumstances of the offense, the defendant's history and characteristics, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). As further discussed herein, a sentence in this range also accounts for the following facts: there is no evidence of any hands-on abuse committed by Knauss; unlike most of the other offenders involved in this scheme, Knauss did not hold a position of community trust or authority; and there is no evidence that Knauss directly contacted any identified victims. Additionally, while Wolf and Strange received significantly higher sentences than the range contemplated by Knauss' guilty plea agreement, they, too, received downward variances at sentencing as their guidelines called for life imprisonment.

The defendant's conduct is still egregious, however, as he participated in a scheme that victimized dozens of children over the course of more than two years. During this time, the defendant was well aware that Wolf was a middle school teacher, and Knauss encouraged Wolf to not only bait his own students but provided strategies for doing so. Knauss also encouraged Wolf in his grooming of a 10-year-old child for hands-on abuse. The defendant has been engaged in the online sexual exploitation of children since at least as early as 2008, demonstrating a lengthy pattern of criminal behavior and a deviant sexual interest in children and images and videos depicting their violent sexual abuse. The defendant's ongoing criminal conduct culminated in his participation in this scheme and warrants a significant prison sentence. For these reasons and the reasons set forth below, the government recommends that the Court impose a sentence of 274 months' imprisonment, at the top of the range contemplated by the parties' guilty plea agreement, to be followed by a lengthy period of at least 15 years of supervised release.

- 2 -

## I.    PROCEDURAL BACKGROUND

On February 8, 2024, a federal grand jury returned a three-count indictment against defendant Patrick Knauss, charging him with conspiracy to manufacture child pornography, in violation of 18 U.S.C. § 2251(a) (Count One), conspiracy to receive and distribute child pornography, in violation of 18 U.S.C. § 2252(a)(2) (Count Two), and receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2) (Count Three).  On March 12, 2024, Knauss was arrested in his home state of Vermont and ultimately removed to EDPA to face the charges in this indictment.  On June 18, 2024, the defendant entered a guilty plea to the indictment pursuant to a written guilty plea agreement with the government.

These charges arise out of the defendant's participation in an online child exploitation catfishing scheme with Andrew Wolf ("Person #1" in the indictment) and Kray Strange ("Person #2" in the indictment).  Wolf's conduct came to light in October 2021 after FBI investigated a CyberTip from DropBox reporting that child pornography had been uploaded to a DropBox account associated with Wolf's SCH email address.  Wolf was arrested on a federal complaint and warrant related to that conduct on October 7, 2021 after FBI executed a search warrant at his residence in Philadelphia.  Law enforcement's search of Wolf's cell phone revealed that his child exploitation activities extended far beyond the DropBox uploads--- for years, he had been conspiring to catfish or bait his own middle school students, among other child victims, to self-produce child pornography and share those images with him online, and he was actively carrying out this scheme with several other perpetrators with whom he communicated via the end-to-end encrypted social media messaging platform Telegram.  Strange was identified as Wolf's co-conspirator in December 2021 and was arrested on a federal complaint and warrant out of EDPA on January 5, 2022 after agents executed a search warrant at his and his parents' residences in

Carthage, New York. Wolf and Strange were indicted by a federal grand jury on February 3, 2022 in EDPA Criminal Number 22-35 and charged with conspiracy to manufacture child pornography and several substantive counts of manufacturing child pornography. The indictment against Wolf and Strange included 15 identified minor victims, all but two of whom were current or former SCH students. Both defendants entered open guilty pleas to the indictment before this Court on June 23, 2022. On February 16, 2023, Wolf was sentenced to 466 months' imprisonment to be followed by 5 years of supervised release. On March 31, 2023, Strange was sentenced to 396 months' imprisonment to be followed by lifetime supervised release. They were ordered to pay a total of $324,320 in restitution to six minor victims who sought restitution.

The evidence of Wolf and Strange's scheme came primarily from their extensive Telegram communications that were extracted from Wolf's cell phone at the time of his arrest and corroboration from victim interviews. In early August 2020, Wolf began providing Strange with known social media handles for some of his students, and Strange also located some students' social media on his own. Ultimately, in January 2021, Wolf provided Strange with a detailed spreadsheet of the students he wanted Strange to target, which greatly assisted Strange in his efforts and which Wolf and Strange used to tally their successful victimization of the targeted children.[1] Wolf and Strange's child exploitation scheme was not limited to Wolf's current and former students, and they discussed other minors Strange was targeting and also shared image and video files of these minors. Among other victims, Strange sought out minor

---

[1] Wolf and Strange *did not* share the spreadsheet with Knauss, and there is no evidence that Knauss was aware of its existence.

boys with large online followings, such as Little League World Series ("LLWS") players, children of political figures, and child Tik Tok stars. Three LLWS series players were identified as victims after the indictment of Wolf and Strange, and this conduct was included in as part of Wolf and Strange's guilty pleas.

Wolf and Strange also involved other offenders in their scheme, including Patrick Knauss. In the same way the FBI extracted the communications between Wolf and Strange from within the Telegram application on Wolf's cell phone, the FBI obtained communications between Wolf and several other perpetrators. Based on the personal details and information included in the Telegram chats, to date, FBI Philadelphia has identified four of Wolf's Telegram associates, including Knauss, and an additional associate of Strange.[2]

## II.     FACTUAL BACKGROUND

Long before Wolf created a spreadsheet to facilitate Strange's catfishing efforts of Wolf's SCH students, Wolf discussed his sexual attraction to his students with other Telegram associates, traded child pornography with other associates, and discussed "baiting" boys. Knauss was one of these associates, with whom Wolf began communicating at least as early as 2018 after Knauss contacted him via email as a "fan" of Wolf's erotic pedophile fiction — short stories that often portrayed adult men raping minor boys that Wolf published on a website called "Nifty" under the penname "Owen Davis." After exchanging fan-mail via email, Knauss and Wolf began communicating via Telegram in August 2019. Eventually, Wolf introduced Knauss to Strange on Telegram, and the three of them participated in a group chat that Wolf administrated called "Boy oh Boy," in which they traded child pornography, provided social

---

[2] These other offenders are further discussed below in Section IV.A.5, *infra.*

media handles of minor boys for Strange to target (catfish), and discussed Strange's efforts, including sometimes providing specific instructions about what kinds of videos and images to entice the boys to self-produce. While Wolf and Knauss discussed baiting Wolf's students, Wolf and Strange did not include Knauss in their score-keeping spreadsheet and shared only a few of the sexually explicit images that Strange obtained from SCH students with Knauss.

Within the Telegram application on Wolf's phone, a private chat was identified between Wolf ("Mr P") and a Telegram user with a display name of "PK" (later identified as Knauss). The chat between Wolf and Knauss took place between approximately August 11, 2019 and September 27, 2021. The chat contained approximately 7,230 messages over more than 1,500 pages of communications. Although they exchanged approximately 969 image/video files during their communications, only 5 files contained viewable content in the forensic extraction of Wolf's phone, which was conducted with the phone in airplane mode.

In August 2019, Knauss and Wolf began discussing sexually exploiting Wolf's students. First, Knauss asked Wolf if he had ever stalked his students' Instagram profiles, to which Wolf responded no. Knauss offered to help Wolf look up his students if Wolf was willing to pass along their names. Wolf provided Knauss with certain students' names and social media accounts. (There is no evidence that Knauss directly contacted any of these students.) Although there were no viewable files of child pornography in Knauss and Wolf's private Telegram messages, the context of the chats indicates that many of the files exchanged depicted minor boys engaging in masturbation, exposing their genitals, and posing nude. For example, on September 2, 2020, Wolf sent multiple image files (now appearing as "empty files" in the forensic extraction) with the message, "Look at [minor student's name] ass here!"

In the Telegram chat, Knauss and Wolf openly discussed "Alex" (Strange) and his efforts to obtain sexually explicit images and videos from minors by "catfishing" or "baiting" them. Knauss told Wolf that he sent several names to Alex to bait. Wolf discussed starting a group chat that included himself, Knauss, and Strange specifically intended to bait boys. Knauss told Wolf that he used to "bait," but no longer did so because "life got busy." Throughout the chat with Wolf, Knauss also regularly asked to receive specific types of child pornography, particularly images of violence and force.

Within the Telegram application on Wolf's phone, a group chat was identified between Wolf ("Mr P"), Strange ("alex ibhhjl"), and Knauss ("PK"). This group chat took place between approximately December 3, 2020 and October 4, 2021 (three days before Wolf's arrest). The group chat's purpose was for trading child pornography and discussing boys for Strange to victimize. The chat contained approximately 1,770 messages over more than 350 pages of communications, and the three exchanged hundreds of image and video files. Wolf created the group chat and named it "Boy oh boy." On December 3, 2020, the chat began with Wolf introducing Alex (Strange) and PK (Knauss): "Hey Alex, remember PK? He wanted to say hi." Knauss suggested, "Thought we could chat about who to bait, etc." Throughout the chat, Knauss gave Strange instructions and suggestions for baiting the minors, and provided more than 100 URLs of social media accounts belonging to boys who appear to be minors for Strange to bait.

During the private Telegram chat with Wolf, Knauss provided specific details pertaining to his geographical location and identity, which assisted FBI in identifying him, such as his correct age and birth month, his whereabouts (Vermont), and his place of employment (a ski resort). On May 24, 2020, Knauss created an Instagram username "Zoey_Madame" to talk to a 15-year-old boy with Wolf. (Based on the Telegram chats, Wolf was already chatting with the

boy on Instagram using his minor female persona and invited Knauss's girl persona to the
Instagram chat after asking PK to "gimmee a first name that I should call you." Knauss
responded, "Zoe," and provided his Instagram handle as "Zoey_madame." This Instagram
account was registered to Knauss' Google email address and Verizon phone number subscribed
in his name, and used the same LG cell phone later seized from Knauss during Vermont's state
search warrant in May 2023.

On May 4, 2023, Vermont law enforcement executed a state search warrant at Knauss'
residence. Knauss answered the door and agreed to be interviewed. The interview was audio-
recorded. In summary, Knauss admitted to operating the zoey_madame Instagram account,
which he claimed he deleted "a long time ago," estimating about two years before the interview.
He acknowledged general knowledge of an FBI investigation in Philadelphia regarding child
exploitation on Telegram, but was evasive. Knauss adopted the Telegram communications
between himself and Wolf and Strange. He also acknowledged being involved in a baiting
scheme but said that his role was only to occasionally find the boys. He claimed that he had
stopped his child exploitation activities many months earlier and he had deleted his child
pornography. Law enforcement seized several electronic devices during the search warrant,
including Knauss' LG cell phone, two laptops, a hard drive, and several thumb drives.

In addition to having been seized from Knauss' apartment where he lived alone, Knauss'
phone contained extensive user attribution evidence. The phone contained at least 17 unique,
cached images of child pornography. 13 of these images depict a minor boy, approximately 13-
14 years old exposing his penis or anus. Six of these images appear identical to images and
videos that Strange distributed in the Telegram group chat to Knauss and Wolf, and three of
these images appear identical to images that Wolf distributed to Knauss and Strange in the

Telegram group chat on September 27, 2021.  The phone contained three cached images (not

CSAM) of Wolf's students from SCH, as well as cached images of files (not CSAM) that Knauss

sent to Wolf and Strange in the Telegram group chat.  The phone contained evidence of hundreds

of visits to the Nifty Archive website between February 3, 2023, and May 3, 2023 (one day

before the execution of the Vermont state search warrant).  There was also a Chrome Autofill

identified for the key words "Owen Davis," which was Wolf's moniker on Nifty.  As discussed

above, it appears that Wolf and Knauss first met after Knauss contacted him as a "fan" of Wolf's

short stories on Nifty where he wrote about adult men having sex with minor boys.

Knauss' Dell Inspiron laptop also contained evidence of CSAM images in cached space.

The device also contained backups from an Apple iPod (not recovered) dating back to 2014.

These iPod backups contained evidence of Kik communications between Knauss and other Kik

users, in which he appears to be impersonating a minor girl talking to boys about sexually

explicit topics.

None of the other devices seized from the residence contained evidence of CSAM.

## III.    SENTENCING CALCULATION

### A.    Statutory Maximum Sentences

**Conspiracy to manufacture of child pornography, 18 U.S.C. § 2251(a), (e) (Count One):** 30 years' imprisonment with a 15-year mandatory minimum term, a minimum 5-year term up to a lifetime of supervised release, a $250,000 fine, a $100 special assessment, mandatory restitution pursuant to 18 U.S.C. § 2259, and if found to be non-indigent, an additional mandatory $5,000 special assessment must be imposed pursuant to 18 U.S.C. § 3014, and up to $50,000 in additional assessments under 18 U.S.C. § 2259A.

**Conspiracy to receive and distribute child pornography and receipt of child pornography, 18 U.S.C. § 2252(a)(2) (Counts Two and Three):** For each count, 20 years' imprisonment, with a 5-year mandatory minimum term, a minimum 5 years up to a lifetime of supervised release, a $250,000 fine, mandatory restitution pursuant to 18 U.S.C. § 2259, a $100 special assessment, and if found to be non-indigent, an additional mandatory $5,000 special assessment must be imposed

pursuant to 18 U.S.C. § 3014, and up to $35,000 in additional assessments may be imposed under 18 U.S.C. § 2259A.

**TOTAL MAXIMUM PENALTY**:
70 years' imprisonment with a mandatory minimum term of 15 years' imprisonment, a minimum 5 years up to a lifetime of supervised release, a $750,000 fine, mandatory restitution, a $300 special assessment, and if found to be non-indigent, an additional, mandatory $15,000 in special assessments must be imposed pursuant to 18 U.S.C. § 3014, along with up to $120,000 in additional assessments under 18 U.S.C. § 2259A.

### B.   Sentencing Guidelines Calculation

The government agrees with the Probation Office's calculation of the defendant's advisory Sentencing Guideline range, outlined in PSR Paragraphs 34-50. The parties also stipulated to these guidelines in paragraph 13 of the written guilty plea agreement.

With a Criminal History Category I and final offense level of 40, the advisory Guideline range is 292 to 365 months' imprisonment. PSR ¶ 113.

### IV.   SENTENCING ANALYSIS

A thorough consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that a sentence within a range of 262-274 months' imprisonment, as contemplated by the parties' Rule 11(c)(1)(C) guilty plea agreement, is appropriate. For the reasons discussed herein, the government requests the Court impose a sentence of 274 months, at the top of the parties' agreed upon range, to be followed by at least 15 years of supervised release.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the

law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).

### A.    Consideration of the 3553(a) Factors

#### 1.    The nature and circumstances of the offense

The production of child pornography is undisputedly a grave offense.  As the Supreme Court has explained, "[c]hild pornography harms and debases the most defenseless of our citizens.  Both the State and Federal Government have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet."  *United States v. Williams*, 553 U.S. 285, 307 (2008).  Congress, too, has explained the difficulties in successfully combating the "immense" problem of child pornography and the "rapidly-growing market" for such materials, which is fueled by new technologies that were largely unavailable when the Sentencing Guidelines were first promulgated. *See S. Rep. No. 108-2 (2003).*  Indeed, Congress has repeatedly expressed its dismay about the "excessive leniency" of federal sentences, *see H. Rep. No. 108-66; S. Rep. No. 104-358*, especially in light of the continuing harm caused to the children appearing in such materials, as well as the inflammatory effect it has on the "desires of child molesters, pedophiles, and child pornographers," which results in a robust and growing market for child pornography and, therefore, increased abuse of innocent children.  *See Child Pornography Prevention Act of 1996,* Pub. L. No. 104-208, § 121, 110 Stat. 3009, 3009-26, 27

(1996), codified at 18 U.S.C. § 2251 note; *United States v. MacEwan*, 445 F.3d 249, 250 (3d Cir. 2006); *United States v. Norris*, 159 F.3d 926, 929 (5th Cir. 1998). The Supreme Court has clearly recognized the harm to these children, noting that the "materials produced are a permanent record of the children's participation…" in the abuse. *See New York v. Ferber*, 458 U.S. 747, 759 (1982); *Osborne v. Ohio*, 495 U.S. 103, 111 (1990) ("The pornography's continued existence causes the child victims continuing harm by haunting the children for years to come.").

Here, the defendant conspired with Wolf, a middle school teacher, and Strange to victimize Wolf's own students, among other child victims. In addition to engaging in the online world of child pornography, which repeatedly victimizes some of the most vulnerable members of society with each time these children's images of being sexually abused by adults are viewed and shared, the defendant went even further and assisted in targeting children known to one of his co-conspirators for sexual exploitation. During 2020 and 2021, the school-age victims of the defendant and his co-conspirators were made even more vulnerable by the Covid-19 pandemic. They were in virtual school, isolated from in-person association with most of their friends and those in their peer group. Like most of society, they were using the Internet to communicate with their friends and loved ones outside of their nuclear families. Use of the Internet to meet friends was normalized, and many of the defendant's victims believed they were communicating with a similarly aged girl who was the friend of a friend. The defendant and his co-conspirators preyed upon this vulnerability, as well as the fact that their intended victims were young teenage boys going through puberty who would respond to positive attention from an attractive girl their same age. To Wolf and Knauss, boys in this age group were the perfect victims, as they discussed in graphic detail via Telegram in January 2020:

| Wolf: | These kids are just getting their pubes and cumming for the first time this year |
| | voices cracking |
| Knauss: | Hahaha |
| Wolf: | perfectly entering puberty |
| Knauss: | Right[3] |

With the knowledge that Wolf was a middle school teacher with daily access to boys in the exact age group to whom they were both sexually attracted, Knauss encouraged Wolf to bait his own students as early as August 2019, even before the onset of the Covid-19 pandemic. This conversation occurred months before Wolf and Strange began communicating online and nearly 18 months before Wolf shared the spreadsheet of his students with Strange. Wolf and Knauss bonded over their shared sexual interest in the age of Wolf's students long before Strange entered the conspiracy and long before any students were actually victimized by their scheme. For example, beginning on November 18, 2019, Knauss and Wolf engaged in the following exchange:

| Wolf: | I've been looking more and more at younger boys the past month or two. Been scouting out the 5th graders in my school the last week or two |
| Knauss: | I'll stick to the 10-14 range |
| Wolf: | Yup, 5th grade is 10 turning 11 |
| Knauss: | True true |
| | Got any pics of those 5th graders |
| Wolf: | Today I met two of the ones I've been looking at from a distance |

---

[3] *See* attached **Exhibit A, to be filed under seal,** for a selection of Telegram chats between Knauss (operating the Telegram username "PK") and Wolf ("Mr. P"). This selection includes the chats referenced in this memorandum that were not part of the change of plea memorandum.

- 13 -

|         | Their school pics just came out last week!                                                                                           |
|---------|--------------------------------------------------------------------------------------------------------------------------------------|
| Knauss: | Aww                                                                                                                                   |
| Wolf:   | And then I went searching for old photos of them on our private website. And found some… [Sends series of now empty image files]     |
| Wolf:   | would love to see my 8th graders fuck our 5th graders                                                                                 |
| Knauss: | Partner them up…                                                                                                                      |
| Wolf:   | I found two third graders that would be worth raping                                                                                  |
| Knauss: | Who                                                                                                                                   |
| Wolf:   | [Sends now empty image file]                                                                                                          |

*See* Exhibit A, pp. 2-7. During this time, it appears that Wolf sent school photos of some of the targeted victims to Knauss (some of which were later recovered from Knauss' cell phone), and Wolf identified some of the targeted victims by name.

During the group chat with Wolf and Strange, Knauss provided the social media handles of more than 100 potential minor victims for Strange to target, in addition to Wolf's students. Knauss also provided Wolf and Strange with ideas for how to victimize the children, suggesting that Strange escalate the sexual exploitation by getting the boys to show their faces in the images and by suggesting they make it into a contest or game with the boys to see "who can send the best pics/vids." In fact, one of the many ways in which Strange initially tested the victims' boundaries was by engaging them in games of truth or dare and a "pick a number" game, in which the victims were asked to respond to questions about their sexual history and interests.

While the defendant's involvement in this years-long child sexual exploitation scheme is the most egregious aspect of his conduct, the crimes charged in the Indictment only scratch the surface of the defendant's involvement in the child exploitation world. As evidenced in the PSR

and Knauss' own statements to the defense's psychological expert, the defendant was involved in the online sexual exploitation of children for nearly 15 years prior to his arrest in this case—consistently trading and viewing child sexual abuse material for his own sexual gratification with only a brief interruption in this behavior after a stint in sex offender treatment between 2011 and 2014.

During some of Knauss' early communications with Wolf, Knauss also gave Wolf ideas for grooming a 10-year-old boy for hands-on abuse.[4]  In January and February 2020, Wolf regularly skipped his own lunch period to attend elementary school recess for the purpose of spending time with this boy.  On January 8, 2020, Wolf told Knauss, "I put my hand on his shoulder and his back and messed up his hair a few times, but I didn't know what to do to escalate things, I figured that was more than enough for today, I loved touching him though hehe."  Knauss responded, "I'd maybe try using my fingers to stroke his neck, maybe try slipping a finger or two under his shirt around the collar."  Exhibit A, pp. 13-14.  Later, Knauss asked for more [non-CSAM] photographs of the child by name and gave Wolf more ideas for escalating their contact to hands-on abuse, asking, "What's his home life like? Could use that to your advantage, missing dad or something."  Exhibit A, pp. 22-23.  Fortunately for this child, the Covid-19 pandemic shutdown schools in March 2020, and Wolf no longer had daily, in-person access to him.

---

[4] This child has been identified, and the FBI has made contact with his parents.  He has not disclosed any hands-on abuse to date.

2.  The history and characteristics of the defendant

The defendant became involved in online child exploitation as early 2008 when he was only 19 years old.[5]  Over the years, the defendant became entrenched in this dark world by developing relationships with other offenders on the platform Telegram and escalating to victimizing children on a near daily basis in the years leading up to FBI Philadelphia identifying him as "PK."

The defendant's own psychologist, Dr. Laura Cooney-Koss, describes Knauss as having a "well above average risk" for future sexual reoffending, particularly without treatment. Fortunately, the community will be protected from the defendant while he is incarcerated, and he can and should receive intensive sex offender treatment while in custody.

Knauss' sexual attraction to boys and his years-long involvement in online child sexual exploitation has infected every area of his life-- it has driven him to abuse alcohol and attempt suicide; it has prevented him from having any kind of long-term relationship with another adult; it has resulted in his termination from multiple jobs.  Now it has resulted in a federal criminal conviction that will require him to register as a sex offender and face more than the next 20 years

---

[5] The defendant's prior 2009 conviction for possession of obscene materials in the state of New Hampshire was not known to the government or FBI prior to the pre-sentence investigation conducted by U.S. Probation because this conviction is not reported in the NCIC (National Crime Information Center) Database.  To the defendant's credit, he self-reported this prior conviction to the U.S. Probation Officer, which enabled Probation to obtain some information about the conviction from New Hampshire.  Based on the forensic evidence recovered from the defendant's electronic devices and the defendant's own statements to his Telegram associates, the government was aware that the defendant had been engaged in online communications with minors and had likely traded and viewed child pornography since at least as early as 2014.  The uncovering of the defendant's prior conviction does not change the defendant's sentencing guideline range, nor does it change the government's view that a sentence of 274 months' imprisonment (at the top of the range contemplated by the parties' guilty plea agreement) is a fair and appropriate sentence in this case.

of his life in prison.  This sentence has been well-earned by the defendant through his demonstrated pattern of child exploitation, his victimization of dozens of children, and his years of engagement with other sexual predators on the Internet.

### 3. The seriousness of the offense, respect for the law, and just punishment

A sentence of 274 months' (more than 22 years') imprisonment is a significant prison sentence, particularly for an offender like Knauss, who has never before spent any time in prison. While this sentence is a slight downward variance from the defendant's sentencing guideline range, it still "reflect[s] the seriousness of the offense, promote[s] respect for the law, and provide[s] just punishment for the offense."  § 3553(a)(2).

### 4. Deterrence

Deterrence is also one of the factors that calls for a significant sentence of incarceration. The defendant himself needs to be deterred from sexually exploiting children in the future.  A lengthy term of 274 months' imprisonment can accomplish this goal.  Section 3553(a)(2) also mandates that the Court consider a sentence that adequately deters others who would commit similar offenses.  The sentence in this case must give notice that the sexual exploitation of children has serious and significant consequences.  A sentence of this length will serve as a deterrent to others inclined to sexually exploit children.

### 5. Consistency in Sentencing

A sentence within the range of 262 to 274 months' imprisonment, as contemplated by the parties' guilty plea agreement, fairly accounts for Knauss' culpability relative to his co-conspirators.  As discussed above, the government views Knauss as less culpable in the child exploitation scheme than Wolf and Strange, and his sentence should reflect that lesser culpability.  Wolf and Strange received significant and well-deserved sentences of 466 months'

imprisonment and 396 months' imprisonment, respectively. Both faced sentencing guidelines of life imprisonment because they were convicted of several substantive counts of manufacturing child pornography, in addition to the conspiracy offense, so their sentences— while still significant— represented downward variances from their sentencing guideline ranges. Wolf's sentence also accounted for his abuse of his position as a teacher, and Strange's sentence also accounted for his history of hands-on sex offenses against minor children, as well as his direct communication with all of the children who were victimized by the scheme. Similarly, Knauss' sentence should reflect the fact that Wolf and Strange excluded him from one of the most egregious aspects of the scheme--- the creation and maintenance of the spreadsheet of victims, as well as the facts that he did not hold a position of community trust, did not directly communicate with any identified victims, and does not have a history of hands-on sexual abuse of children. The sentence contemplated by the guilty plea agreement reflects a slight downward variance from the bottom of Knauss' guideline range (292-365 months' imprisonment) and fairly accounts for his role in the conspiracy, his relative culpability, and the other sentencing factors.

In addition to Knauss, to date FBI Philadelphia has identified four other offenders who communicated on Telegram with Wolf and Strange regarding their shared sexual interest in children, traded child pornography with them, and, on occasion, discussed and participated in their scheme to catfish minor boys to manufacture child pornography. One of these offenders, Donald Michael, also known as "Baseball Fun," was recently charged in EDPA Criminal Number 24-263 with conspiracy to manufacture child pornography (with Wolf and Strange) and related offenses. He is awaiting trial before this Court. Unlike Knauss, Michael held a position of trust as a youth baseball coach for nearly 20 years, and he also was directly involved in

catfishing minor boy victims by impersonating a minor girl online. Three individuals were charged in other federal districts:

- Alden Bunag (aka "Alden"), a former teacher, was charged in the District of Hawaii, Criminal Number 23-41. Bunag was engaged in hands-on abuse of one of his own minor students and shared videos of himself engaged in sex acts with the child with Wolf. He pleaded guilty to one count of manufacture of child pornography and was sentenced to 210 months' imprisonment to be followed by 15 years of supervised release in January 2024. There is no evidence that Bunag was involved in the conspiracy to manufacture child pornography by catfishing boys online.

- Daniel Dasko (aka "Mr. Pickles"), a former teacher and youth hockey coach, was charged in the Southern District of California, Criminal Number 22-1715. Dasko pleaded guilty to distribution of child pornography with the cross-reference to manufacturing sentencing guidelines and was sentenced to 188 months' imprisonment to be followed by 15 years of supervised release in September 2023. Among other activities, Dasko provided information about his students and hockey players to Strange for the purpose of baiting them.

- James Bowers (aka "Garfield"), an associate of Strange, has been charged by federal complaint and warrant in the Southern District of New York, Criminal Number 22-mj-7924, with distribution and receipt of child pornography. His case is pending.

While his conduct is abhorrent, Knauss is one of the least culpable of this group of offenders, as he did not hold any position of trust or authority over the victims, did not directly contact any of the identified victims, and was not engaged in hands-on abuse of any children. The sentencing range contemplated by the parties' guilty plea reflects these facts and is also

consistent with sentences imposed in EDPA on offenders who engage in online production of child pornography. Such sentences are frequently within or slightly below the sentencing guideline range, but well above the 15-year mandatory minimum. *See, e.g., United States v. Cunningham* (18-391) (Diamond, J.) (sentence of 240 months' imposed where defendant, a public school teacher's aide, used a fake teenage persona to entice three victim students to produce sexually explicit images online; guidelines of 235-293 months' imprisonment); *United States v. Connor* (19-057) (Sanchez, J.) (sentence of 300 months' imposed where 22-year-old defendant enticed one teen victim online; guidelines called for life imprisonment); *United States v. Totoro*, (15-291) (Pappert, J.) (sentence of 300 months' imprisonment imposed for former tennis coach who produced images of one athletic student during sexual abuse of her; guidelines of 292-365 months); *United States v. Richard Blong*, (19-302) (Padova, J.) (sentence of 204 months' imprisonment imposed for 27-year-old offender who enticed three teenage girls online to manufacture child pornography and met one victim in person for sexual contact; guidelines of life imprisonment).

For all these reasons, the government submits that a sentence of 274 months' imprisonment is a fair and appropriate sentence.

### 6. Guideline Policy Statements Issued by the Sentencing Commission

The sentence sought by the government also comports with the policy statements and studies conducted by the United States Sentencing Commission ("USSG"). In October 2021, the USSG published a report entitled Federal Sentencing of Child Pornography Production Offenses (hereinafter "Child Pornography Production Report"). *See* www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf. This report is a compilation of data from 2005

- 20 -

through 2019 for every offender convicted in the United States of the crime of production of

child pornography.  Importantly, the Sentencing Commission found that in the 15-year period

studied, the long-term trend shows that "[C]ourts consistently sentence child pornography

production offenders to lengthy sentences."  *See Child Pornography Production Report* at 21.

Indeed, in analyzing the bases for the Courts' imposition of such lengthy sentences, the

Sentencing Commission recognized that "child pornography production offenses are serious

crimes that memorialize the sexual abuse and exploitation of children."  *Id.* at 54.

The Child Pornography Production Report analyzed a number of cases over the 15-year

study period and determined "average" sentences imposed for production offenses.[6]  The Report

found that the average sentence imposed for all production crimes was 275 months'

incarceration.  *Id.* at 21-22.  The data showed that the "average" sentence increased in length for

the most egregious of production offenders.  The Report shows that 57% of the sentences

represented downward variances from the applicable sentencing Guideline range; more than 20%

of that number was based on government-sponsored downward variances.  *Id.* at 22.

7.  Other considerations

There is no need in this case to adjust the sentence in order "to provide the defendant

with needed educational or vocational training, medical care, or other correctional treatment in

the most effective manner… ."  § 3553(a)(2)(D).  The defendant can and should receive sex

---

[6] The "average" sentencing numbers are based on data that inaccurately results in
"average" sentences that are actually lower than the true average sentence.  In calculating these
averages, those defendants who received sentences of 470 months or greater (including life) were
limited in the sentence average computations as just 470 months' incarceration.  *See* Child
Pornography Production Report at 21, FN 35.

offender treatment while serving his federal prison sentence.

        8.   Restitution and Financial Penalties

Restitution is mandatory pursuant to 18 U.S.C. § 2259. To date, the government has received one restitution request for a victim whose images were recovered from the defendant's laptop. This victim is one of four victims previously identified by the National Center for Missing and Exploited Children ("NCMEC"), whose images were recovered from the defendant's electronic devices.

The government and the defendant agree and stipulate that the defendant should be ordered to pay a total of $3,000 in restitution to this victim, identified by the pseudonym "Jessy." The government has shared supporting documentation for the victim's restitution request with counsel for the defendant and the U.S. Probation Officer, and will make these materials available to the Court if the Court would like to review the materials prior to ordering restitution.

The government agrees that the defendant is indigent for purposes of the additional special assessments under the Justice for Victims of Trafficking Act (JVTA), and the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 (AVAA), and the government does not request that the Court order the defendant to pay these assessments or a fine.

## V.   CONCLUSION

For the reasons set forth above, the appropriate considerations of sentencing favor the imposition of a sentence within a range of 262-274 months' imprisonment, as contemplated by the parties' guilty plea agreement. The government respectfully requests that the Court impose a sentence of 274 months' imprisonment, at the top of this agreed upon range, to be followed by a

period of at least 15 years of supervised release with the special conditions for sex offenders

recommended by the U.S. Probation Office.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

*/s/ Kelly Harrell*
KELLY HARRELL
Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date I caused a true and correct copy of the foregoing

Government's Sentencing Memorandum to be served by email and ECF filing upon counsel for

defendant:

>        Thomas A. Dreyer, Esq.
>        tdreyer610@aol.com


>                */s/ Kelly Harrell*
>                KELLY HARRELL
>                Assistant United States Attorney


Date:  October 15, 2024